## MAY *v*. TILLMAN.

M., in 1815, conveyed certain premises by warranty deed to R., who afterwards died, and E. R., his widow, applied to the governor and judges of the territory of Michigan, as the widow and legal representative of R., under the act of congress of April 21, 1806, entitled " An act to provide for the adjustment of titles of lands in the town of Detroit and territory of Michigan, and for other purposes," placing her application on the deed from M. to R., and in pursuance of such application the premises were deeded to her. In an action of ejectment brought by the widow of M. for her right of dower in the premises, it was held E. R. and those claiming under her were estopped, by the deed from M. to R., from denying the seizin of M.

CASE reserved from Wayne Circuit Court. Ejectment for dower. The facts are fully stated in the opinion of the court.

*Davidson*, for plaintiff.

*Backus*, for defendant.

*By the court*, GREEN, J. James May, the husband of the plaintiff, for several years prior to the 15th of November, 1815, held the premises in question, with the exception of a small parcel thereof, under deeds of conveyance in fee from several individuals; and on the last mentioned day he conveyed the same to Duncan Reid, by a warranty deed indented. Reed subsequently died; and Mrs. Eleanor Reid, his widow, (now Mrs. Sheldon) applied to the governor and judges of the late territory of Michigan, as the widow and legal representative of the said Duncan Reid, under the act of Congress of April 21, 1806, entitled "An act to provide for the adjustment of titles of land in the town of Detroit and territory of Michigan, and for other purposes," for a deed

of the same; which application was made under and by virtue of the said deed from May; and in pursuance of said application the lands were deeded to her. The defendant is in possession, under Mrs. Sheldon.

The first section of the act of Congress referred to provides, "that the governor and judges of the territory of Michigan shall be, and they or any three of them are, hereby authorized to lay out a town, including the whole of the old town of Detroit, and ten thousand acres adjacent, excepting such parts as the president of the United States shall direct to be reserved for the use of the military department, and shall hear, examine and finally adjust all claims to lots therein, and give deeds for the same."

It is insisted, on the part of the defendant, that May had only an equitable title to the premises in question, upon which no right of dower could attach. At the common law a widow could not be endowed of an equity of redemption, or other mere equitable interest; and the question in this case is, whether the title of May is to be deemed a *legal* title. · In the case of May *v.* Specht *et al,*[*] decided at the present term of this court, the character of a title acquired by conveyance and possession, while the paramount title was in the government of the United States, was considered. In this case it does not appear whether actual possession accompanied the conveyances to and from May or not, and it does not seem to be material, inasmuch as the law under which the premises were deeded to Mrs. Reid did not make possession a pre-requisite to the giving of the deed. The powers of the governor and judges extended only to the hearing, examining, and finally adjusting all *claims* to lots in the city of Detroit. Mrs. Reid *claimed* the lots in question as the widow and legal representative of Duncan Reid, her late husband, under and by virtue of the deed from May. What estate did she claim by virtue of that deed? Evidently an estate in fee simple; and this claim was recognized as good, and the lots were deeded to her accordingly.

By what right does she now claim? Can she now say, that she claims solely under the deed of the governor and judges, or of the mayor, recorder and common council of Detroit, who succeeded to the

---

[*] *Ante,* p. 187.

powers of the governor and judges? I apprehend not. The deed to her operated merely as an extinguishment of the title of the United States, and was a recognition of the *legal* title which May *claimed* and conveyed to Reid, and which *she* claimed, as the legal representative of her husband. While we might hesitate to apply the strictly technical doctrine of estoppel in a case where it would work gross injustice, as we believe in many cases it has done, yet we feel no hesitation in saying that Duncan Reid, and Mrs. Sheldon, who claims under him, ought to be bound by their solemn admissions, and estopped from denying legal seizin in James May during the coverture. The application of that rule in this case, operates to prevent injustice, and not to produce it; and this class of cases, it seems to me, ought long ago to have been distinguished from that in which the party has been debarred from showing the purchase of an adverse paramount title, set up in opposition to that under which the possession was obtained, and when the party has been obliged to pay the full original value of the estate, in order to avoid an eviction, and save his improvements.

In the case of Blake & Goodhue, *v.* Tucker, 12 Vermont R. 44, the court say, " the whole doctrine of estoppel is based upon this principle : to effect justice and prevent wrong." In that case, it was holden, that a charter granted by the state of Vermont in 1791, enured for the benefit of the grantee of the person to whom the charter was made, by a deed of quit claim and release, with a covenant of warranty against all claims of all persons claiming the same under the grantor, his heirs or assigns, or the state of Vermont.

In the case of Vanderheyden *v.* Crandall, 2 Denio 9, the facts were briefly these: On the 1st August, 1792, M. V., having only an equitable interest for life, (the legal estate being vested in trustees,) executed a mortgage with covenant of seizin, to the loan officers of the county of Rensselaer. On the 18th of September, 1799, upon a foreclosure of the mortgage, the loan officers conveyed the premises in fee to P. In 1809, the fee simple passed to M. V., the mortgagor, by descent, on the death of his son, D. M. V., in whom the remainder of the estate had been vested by devise. The question arose between those holding under the title derived from P., the purchaser under the mortgage, and those claiming under the heirs of M. V., who died in 1825. The court say, that the remainder in fee simple, which vested in M. V.

on the decease of D. M. V., enured by way of estoppel, to the benefit of the purchaser at the mortgage sale, which was a fee simple absolute; and many authorities are cited, establishing this doctrine. See, also, 2 Hill 303.

In the last cited case, a patent was issued in the name of a deceased soldier, and it was held to confirm the title of the heirs, and of all persons deriving title from or through them as purchasers and devisees. " But," says Chief Justice Nelson, " the purchaser takes the estate *cum onore.* If the heir, from whom he derives title, has encumbered it by mortgage or otherwise, he takes subject to the charge, the same as in any other case of purchase; and so as to the devisee of the heir, who is put in the same category with the purchaser. If a lease for life or for years has been made by the heir before the conveyance or devise, the purchaser or devisee must take subject to it: and the same rule prevails in respect to an inchoate estate in dower, or any other interest created either by the act of law or of the heir."

It must be certified to the circuit court for the county of Wayne, as the opinion of this court upon the questions reserved in this case, that the plaintiff is entitled to recover her dower in the premises in question.

*Certified accordingly.*