CAROLINE E. BEEBE v. RICHARD G. LYLE.

*Dower—Equitable interest of deceased—Ejectment—Statute of limitations.*

1. Ejectment will not lie for the recovery of dower where the husband had a mere *equitable* interest in the land at the time of his death.

    So *held*, where the husband held a contract for the purchase of part-paid primary school land, and his interest thereunder was sold at administrator's sale subject to the dower rights of his wife, and the grantee of the purchaser took possession of the land, and paid the balance due the State, and received a patent therefor, the evidence not showing that the contract price agreed to be paid by the deceased was fully paid.

2. The recovery of dower is barred by the statutory limitation upon actions of ejectment.

Error to Saginaw. (Gage, J.) Argued October 26, 1888. Decided November 28, 1888.

Ejectment. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*H. H. Hoyt,* for appellant, contended:

1. The legal title was in the State at time of the husband's death, but he held an equitable right which could have been enforced, and which the State would have respected, and without which the defendant could not have obtained a patent, which right was derived through assignments from the holders of the State certificate, under which the holder is entitled to possession, and may maintain trespass or ejectment, or any other proper action to recover possession, and such certificate may be recorded the same as deeds of conveyance; citing How. Stat. § 5279; and homestead rights exist in such holdings; citing *Allen v. Cadwell,* 55 Mich. 11; and such interest may be sold on execution, and may be mortgaged, and the purchaser at the execution or mortgage sale is deemed the assignee of the contract; citing

How. Stat. §§ 5266, 5289, 5335; and the right of Chauncey Beebe in this land was something more than a mere equity.

2. Defendant is estopped from denying plaintiff's right of dower. By claiming title under the contract of the husband, he confirms all of its provisions, and cannot establish his claim to the land by adopting such as are in his favor and repudiating the rest. The confirmation by the patent to defendant must be treated as taking effect by relation upon the title of Beebe, and confirming it as an estate of inheritance in fee-simple in him, entitling plaintiff to dower; citing *May v. Specht*, 1 Mich. 191; *May v. Tillman*, Id. 264.

*William G. Gage*, for defendant, contended for the rule laid down in the opinion.

LONG, J. This is an action of ejectment for dower interest in 10 acres of land in Saginaw county. Suit was commenced July 18, 1887. Plea, general issue. The cause was tried in the Saginaw circuit court before a jury, and the court directed the verdict for defendant. Plaintiff brings error.

It appeared upon the trial that the plaintiff is the widow of Chauncey Beebe, deceased, to whom she was married in 1866. Chauncey Beebe died in 1868. In his life-time the parties planted and gathered crops off the land in controversy, and after his death the widow rented it, and had the avails, until it was sold by the administrator of her husband's estate. At the time of the sale by the administrator, Mrs. Beebe made claim for her dower interest therein, and so stated to James Beebe, who became the purchaser at the administrator's sale.

The files and records of the probate court were put in evidence by the plaintiff, from which it appears that on October 12, 1870, William Mattison, administrator of the estate of Chauncey Beebe, deceased, made a petition for the sale of this and other lands of the estate, and such proceedings were had that the lands were sold; and in a sworn report of such sale the administrator stated that

this description was sold to James Beebe for the sum of $75, subject to the right of dower therein of the widow of the deceased.

Plaintiff, also, to establish her title to the land, put in evidence a certified copy of a certificate issued by the Commissioner of the State Land-office for primary school land, dated February 14, 1851, and in the description of which this land is included.    This certificate was issued to Isaiah I. Hudson, of Saginaw, upon a private sale, the consideration recited therein being $482; the amount paid down, $120.58; and balance remaining unpaid, $361.74; which balance, by the terms of the certificate, was to draw interest at 7 per cent., and payable at any time, at the option of the purchaser.    This certificate is in the usual form of certificates for part-paid primary school land, and numbered 3,175; the lands being described in such certificate as—

"Lots number three (3) and four (4), of section sixteen (16), town eleven (11) north, range five (5) east, and containing 120.58 acres of land."

On October 14, 1852, Isaiah I. Hudson assigned this certificate, by an assignment in writing, duly acknowledged, to Egbert Eldred, and thereby conveying to Eldred 100 acres of said lands.    On November 15, 1880, the Commissioner of the State Land-office made a certificate that the whole amount of principal and interest, charges, and taxes had been paid on said lands, and that the holder of the certificate No. 3,175 was entitled to a patent for the lands described therein.

Plaintiff also put in evidence a contract for the sale, made by said Eldred to one Andrew Ellis, agreeing, upon the part of Eldred, to convey to Ellis, on the payment of $100, 10 acres of land, the description of which is embraced in said contract, and being the lands in

controversy here, and forming a part of the same lands described in certificate No. 3175. The amount and times of payment under this contract of the $100 were $33, to be paid on or before April 1, 1860; $33, to be paid on or before April 1, 1861; and the remainder to be paid on or before April 1, 1862, with interest from the time of the first payment. Upon such payments being fully made, Eldred was to make, execute, and deliver a good and sufficient deed of warranty of the lands. This contract was recorded in the office of the register of deeds of Saginaw county on September 9, 1868.

On June 16, 1862, Andrew Ellis assigned all his interest in this contract, by an assignment in writing, to Chauncey Beebe, the husband of plaintiff, for the sum of $100, which was paid down at the execution of the assignment. This assignment was recorded on the same day as the original contract. The contract was offered in evidence, and shows the following indorsements:

"DEC. 28, 1859.

"Received on the above contract, ten dollars.

"EGBERT ELDRED."

"Received on the within contract, fifteen dollars.

"EGBERT ELDRED."

"APRIL 1, 1860.

"Received on the within contract, eight dollars.

"EGBERT ELDRED."

"MARCH 20, 1861.

"Received on the within contract, nineteen dollars.

"EGBERT ELDRED."

"OCT. 21, 1862.

"Received on the within contract, five dollars.

"MARTHA A. ELDRED."

"FEBRUARY 14.

"Received on the within contract, thirty-nine dollars and seventeen cents.

"MARTHA A. ELDRED."

"MARCH 6, 1863.

"Received on the within contract, sixteen dollars and seventy-five cents.

"MARTHA A. ELDRED."

"Received on the within contract in full ———."

.The words on the last line were written on a different part of the contract from the other indorsements, and not signed.

The plaintiff also put in evidence a certified copy of a deed from the administrator of the estate of Chauncey Beebe to James Beebe, dated February 16, 1871, conveying the land in controversy for the consideration of $75. This deed conveyed the land without excepting the dower. Plaintiff also put in evidence a deed, dated October 12, 1872, from James Beebe to Richard C. Lyle, the defendant, conveying the lands in controversy. Plaintiff then gave testimony, showing that after defendant took possession of the lands she sent her son, a boy 20 years of age, to ask defendant for her dower interest.

Upon the cross-examination of plaintiff it appeared that Egbert Eldred died in the war, and that Mrs. Eldred afterwards became the wife of one Jared Bradshaw. Plaintiff also testified that Mr. Andrew Ellis was dead.. Plaintiff here rested her case.

The defendant put in evidence a deed, dated September 19, 1872, from the Auditor General of this State to Darwin A. Pettibone, for the sale of these lands for delinquent taxes for the year 1866, and also a deed from Darwin A. Pettibone to James Beebe, dated October 2, 1872, conveying these lands. These deeds were offered in. evidence for the purpose of showing that under a tax deed defendant had been in possession of the land in controversy adversely for over 10 years. Defendant also put. in evidence a deed of this land from the Auditor General to Richard C. Lyle, defendant, dated July 23, 1874, for sale of said lands for delinquent taxes for the year 1870;. also a deed from Angeline Bradshaw, widow of Egbert Eldred, to Richard C. Lyle, dated November 20, 1877, conveying her undivided third interest in said lots 3. and 4.

Defendant also gave evidence tending to show that James Beebe was in possession of this 10 acres in the years 1871 and 1872; that, after his (defendant's) purchase from Beebe, in October, 1872, he went into possession thereof, and had continued in possession up to the time of the trial; that he had cleared up over one-half of it since that time, stumped it, and put in crop there every year; that he had paid the taxes thereon for the year 1872, and every year since, and kept up the interest at the State Land-office; that, having paid the State the full sum due under certificate No. 3,175, and finding some defects in the assignment of the certificate issued by the State Land-office, he petitioned the Legislature for the passage of an act enabling him to procure a patent; that in pursuance thereof the Legislature passed Act No. 246, Laws of 1881, authorizing the Governor to issue the patent, which was duly issued to him, he having paid the amount of $456, in full for principal, interest, and charges due under the certificate.    This patent so issued included the whole of lots 3 and 4 of section 16.

Defendant further gave evidence tending to show that he had no knowledge or information at the time of his purchase that Mrs. Beebe made any claim for dower in the lands; that he was told by James Beebe, from whom he purchased, that the lands were unincumbered, except the amount going to the State, as they were part-paid school lands; that he had an assignment of all the interest in lots 3 and 4, except some interests which the Hodgeman heirs claimed in about 2 acres off lot 3, lying north of the land in controversy; that he was not able to trace these heirs.

Under this state of facts, which, upon this record, appear to be conceded, plaintiff's counsel contends that Chauncey Beebe was seized of an estate of inheritance, and that under the provisions of section 5733, How. Stat.,

his widow, the plaintiff in this case, is entitled to dower therein; the same not having, as claimed, ever been barred. This section reads:

"The widow of every deceased person shall be.entitled to dower, or the use during her natural life of one-third part of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage, unless she is lawfully barred thereof."

This section gives the widow a dower interest in lands, substantially as at the common law. *Pratt v. Tefft,* 14 Mich. 196. Dower, at the common law, is defined to be—

"The third part of all the lands whereof the husband has been seized during the coverture of such an estate as the children by such wife might by possibility have inherited, and to which, by the death of her husband, the wife is entitled for her life." 3 Bac. Abr. 191.

At the common law, the widow could not be endowed of an equity of redemption, or other mere equitable interests. *May v. Tillman,* 1 Mich. 263; *Daily v. Litchfield,* 10 Id. 37.

Chauncey Beebe's claim to this land grew out of the contract made by Egbert Eldred to Andrew Ellis. The primary school certificate had been issued on February 14, 1851, to Isaiah I. Hudson, and one-quarter of the purchase price paid down. This certificate, on October 14, 1852, was assigned to Egbert Eldred, and Eldred, on December 28, 1859, entered into the contract in writing to convey these lands to Ellis. This contract, after reciting the payments to be made by Ellis, says:

"And forthwith, upon receiving the above payments, made by the party of the second part, the title to said land is to be invested in said party of the second part, and to hold said land under this article, which from that time is to be held as a bond for a good and sufficient warranty deed, to be made, executed, and delivered to the party of the second part at such time as the party of the

first part shall be able to pay what is yet due to this State, and obtain a deed therefrom."

This contract, on June 16, 1862, Ellis assigned to Chauncey Beebe, and the payments were indorsed on such contract, as before stated. There is no evidence that this contract was ever paid up in full. The legal title during all these years remained in the State. Hudson, Eldred, and Ellis, each, during the time they held this certificate, undoubtedly had the right, under these transfers, to make payment to the State of the balance due upon the certificate, and obtain the patent, if these transfers and assignments had been in form required by law and the practice of the State Land-office.

In 1868 Chauncey Beebe died, and the lands in controversy were sold at administrator's sale, and through that source, and the deed from Mrs. Bradshaw, the widow of Eldred, the defendant traces his right to make payment under the certificate to the State, and obtain the patent. This patent was issued to him sometime in 1881, and through it and the Auditor General's deeds, and his possession thereunder, the defendant claims his title.

At the death of Chauncey Beebe the legal title was in the State. The interest which he claimed at his death could only be perfected into a legal title by payment in full of the contract to Eldred, and the payment by Eldred, or some other person having the right to receive the patent, to the State. His interest in the land was a mere equity, without any legal title until Eldred and the State were paid, and deed delivered, and patent issued. No evidence is given that Eldred was so paid, so that Beebe became entitled to a deed, and no claim is made that the State was paid until the payment made by defendant before obtaining his patent.

The fact that defendant afterwards obtained the patent

could not inure to the benefit of the plaintiff, to perfect her title, under the circumstances here stated.

Defendant, at the time the suit was begun, held the patent for the land from the State, and under it the legal title. If the plaintiff has any interest it cannot be recovered in an action of ejectment. *Romain v. Lewis,* 39 Mich. 233; *Carpenter v. Ingersoll,* 43 Id. 433 (5 N. W. Rep. 457); *Allen v. Cadwell,* 55 Id. 11 (20 N. W. Rep. 692).

If, however, the plaintiff had any dower interest in these lands, her action is barred by the statute of limitations. Her husband died in 1868. The administrator's deed was made to James Beebe, through whom defendant claims title, on February 16, 1871. This suit was commenced July 18, 1887. If Mrs. Beebe, the plaintiff, had any claim for dower in the premises, an action had accrued to her for its recovery at least at the time of the giving of this deed to James Beebe, and his claim of right to the possession and enjoyment of the whole estate under it. More than 15 years had elapsed since that time before this suit was brought. The recovery of dower is barred by the statutory limitation upon actions of ejectment. *Proctor v. Bigelow,* 38 Mich. 282.

We need not discuss the claim made by defendant under the two tax deeds. The other claims made by the defendant also become unimportant from the views heretofore expressed.

The court below properly directed verdict for defendant, and the judgment of the court below must be affirmed, with costs.

The other Justices concurred.