IN THE MATTER OF THE ASSIGNMENT OF THE SCOFIELD BUGGY COMPANY. THE AMERICAN WHEEL COMPANY v. THE SCOFIELD BUGGY COMPANY.

| | |
|---|---|
| 89 | 15 |
| 93 | 531 |
| 89 | 15 |
| 97 | 504 |
| 89 | 15 |
| 100 | 68 |
| 89 | 15 |
| 122 | 129 |

*Assignment for benefit of creditors—Secured creditors—Distribution of assets.*

1. It is a sound principle of equity that a mortgagee is entitled to the whole mortgaged property as security for his debt, and that he has a right to have the whole avails of such property applied in payment thereof; citing Jones, Mort. § 707; *Spencer v. Waterman,* 36 Conn. 342; *Hague v. West Hoboken,* 23 N. J. Eq. 354.

2. A trustee to whom a corporation has executed valid mortgages to secure certain of its creditors prior to making a common-law assignment is entitled to be paid a dividend based on the whole amount secured by the mortgages proved against the insolvent estate, said dividend being less than said amount; and the question of its distribution among the creditors secured by said mortgages does not concern the receiver or the court.

Appeal from Clinton. (Daboll, J.) Submitted on briefs November 6, 1891. Decided December 21, 1891.

Bill for a receiver. The Fifth National Bank of Grand Rapids appeals from an order apportioning dividends among secured creditors. Reversed. The facts are stated in the opinion.

*Earle & Hyde,* for appellant.

*H. E. Walbridge,* for the American Wheel Company and the receiver.

CHAMPLIN, C. J. This is an appeal from an order of the circuit court for the county of Clinton, made under the supervisory authority given to the court over assign-

ees and receivers by How. Stat. § 8749. The order was made upon the petition of the receiver appointed by the circuit court upon a bill filed to carry into effect a common-law assignment executed by the Scofield Buggy Company.

This company had, previously to making the common-law assignment, executed real and personal estate mortgages, covering nearly all of the assets of the company, to Hiram M. High, to secure the payment of certain enumerated creditors for the amounts stated in the mortgages, and, among others, to the Fifth National Bank of Grand Rapids, Mich., for $5,500 direct indebtedness, and a contingent liability upon commercial paper given to the Scofield Buggy Company by its customers and indorsed by it and discounted at the bank, and avails received by the Scofield Buggy Company, for about $19,-000. No question is made as to the validity of these mortgages.

Before the trustee named in said mortgages proceeded to foreclose, a receiver was appointed of all the property of the Scofield Buggy Company, who took possession and converted it into money, or is in the process of converting it into money. The mortgagees proved their claims before the assignee or receiver as secured debts, and it seems to be conceded that they are to be paid *pro rata* out of the avails of the assets, or in full, if sufficient, before the unsecured creditors are to be paid. Mr. High accepted the trust under the mortgages, and represents the interests of the mortgagees. The receiver has converted a sufficient amount of assets into money to warrant him in paying a dividend to Mr. High or to the mortgagees; but, as he was uncertain as to what *pro rata* amount he would be justified in paying over to each of the mortgagees, he filed his petition setting forth certain facts, and asked the advice of the court.

It will only be necessary to refer to that portion of the petition, and the answer thereto of the trustee, and the order appealed from, which affect the rights of the Fifth National Bank of Grand Rapids as a *cestui que trust* under the trust mortgages, as the appeal is brought in its behalf. The receiver sets forth in his petition—

"That the claim of the Fifth National Bank of Grand Rapids, filed December 10, 1890, and being one of the creditors secured by said mortgages, was for the sum of $14,262.99. Of this sum about $4,076.58 seems to have been on the Scofield Buggy Company's paper, and the residue was upon customers' and other paper discounted by the said Scofield Buggy Company with said bank.

"Your petitioner further shows that he is informed and believes that since the filing of the proof of claim aforesaid a great portion of this claim has been paid and taken up, and therefore is no longer in existence."

He therefore prays—

"That the Fifth National Bank of Grand Rapids, Michigan, by and through their trustee, Hiram M. High, be required by an order of this court to make additional proof of their claim, showing its true *status* at the present time—*First*, as to the actual amount of its direct claim against the Scofield Buggy Company; and, *second*, as to any and all claims it may hold against the said Scofield Buggy Company for paper indorsed by the said Scofield Buggy Company, and all other paper discounted by said Scofield Buggy Company with said bank; and that they make proof showing any and all payments received by them upon any of the indebtedness, either direct or contingent, since the filing of their claim, December 10, 1890."

To this petition Hiram M. High, trustee, on behalf of the Fifth National Bank of Grand Rapids, protesting against the order of the court made therein of May 18, 1891, requiring further proofs, and objecting thereto, for the reason that the same is not warranted in the statutes governing assignments, and because the time in which

the petition upon which said order is based should or could be filed has long since elapsed, for answer thereto says that he admits,—

"As stated in said petition, that there was due to the Fifth National Bank of Grand Rapids, as appears by proof of debt filed by said bank on the 10th day of December, 1890, the sum of $14,262.99.

"This defendant denies, as stated in said petition, that $4,076.58 was loaned to said Scofield Buggy Company upon its paper, and also denies that the residue was upon customers' and other paper discounted by the said Scofield Buggy Company with said bank."

He denies "that since the filing of the proof of claim aforesaid a great portion of the claim of said the Fifth National Bank of Grand Rapids has been paid and taken up."

He says "that no part of the claim proved by the said the Fifth National Bank of Grand Rapids, and filed herein December 10, 1890, has been paid by the said petitioner, the receiver of said Scofield Buggy Company, or by the said the Scofield Buggy Company, and that no part of the property, or the avails thereof, covered by the mortgages to this defendant as trustee for said bank and others, has been delivered to or paid to the said the Fifth National Bank of Grand Rapids, and that it has in no wise received any money or benefit, directly or indirectly, from the estate of the said the Scofield Buggy Company.

"This defendant further says that, prior to the creation or existence of the indebtedness proved by said the Fifth National Bank of Grand Rapids against the Scofield Buggy Company, the Scofield Buggy Company, by its officers duly authorized, applied to the said the Fifth National Bank for a loan; that the said the Fifth Natioual Bank refused to extend credit to the said the Scofield Buggy Company upon its property and credit, but required security for any loans to said company; that thereupon, on the 17th of August, 1889, the said Scofield Buggy Company, together with F. A. Scofield, George Bayne, H. Anderson, J. V. Retan, and Samuel F. Pearl, entered into an agreement with the said Fifth National Bank of Grand Rapids, by which the aforesaid persons jointly and severally bound themselves

to pay, and guaranteed the payment of, any and all checks, drafts, notes, or acceptances which the said bank might hereafter cash, credit, or discount for the Scofield Buggy Company, and thereby waived notice of demand and non-payment of the same at maturity, and guaranteed the payment of the same at maturity or any time thereafter, with interest at 8 per cent. per annum until paid, and did then and there agree to pay all costs and expenses paid or incurred in collecting the same; that the said the Fifth National Bank of Grand Rapids, relying upon the undertaking made as aforesaid, thereafter loaned to the said the Scofield Buggy Company the sum of $22,558.19, taking for said loan, as collateral security to said agreement, the promissory notes and bills of exchange mentioned in the schedule attached to said proof of debt marked 'Exhibit A;' that since the 1st day of October, 1890, and prior to the 10th day of December, 1890, the said bank received upon such indebtedness, and in part payment thereof, the sum of $8,295.20 from such collateral security; that on or about the 19th day of September, A. D. 1890, the said the Scofield Buggy Company, being financially embarrassed, and unable to meet its paper held by the said the Fifth National Bank of Grand Rapids and others, for the purpose of adjusting and settling the account between it and said Fifth National Bank of Grand Rapids, and to secure the said indebtedness, made and executed the chattel mortgage referred to in the bill of complaint herein, and thereby agreed to and with the said the Fifth National Bank of Grand Rapids to pay all of its said indebtedness on or before the 1st day of October, A. D. 1890, and thereby became indebted to the said the Fifth National Bank of Grand Rapids in the sum of $24,500, and thereby undertook and promised to pay the said the Fifth National Bank of Grand Rapids all of the indebtedness, without reference to any security held by said bank therefor, and thereby reduced the indebtedness of the said Scofield Buggy Company upon commercial paper discounted by the said the Fifth National Bank of Grand Rapids to a direct and primary obligation on the part of said Scofield Buggy Company; that the said Scofield Buggy Company did not pay the indebtedness to the said the Fifth National Bank of Grand Rapids, as agreed in said chattel mortgage, on or before October 1, 1890, and never has paid the same or any part thereof.

"Upon information and belief this defendant further says that since the 10th day of December, 1890, the said Fifth National Bank of Grand Rapids has realized upon its collateral security to said contract of August 17, 1889, and applied in payment upon said indebtedness to said bank from said Scofield Buggy Company, the further sum of $———; that this sum has been received upon commercial paper taken as collateral security to said agreement other than the paper made in the first instance by the Scofield Buggy Company, and upon which the Scofield Buggy Company was indorser, which indorsement was further collateral security to the said agreement of August 17, 1889; that no part of said last-mentioned sum belonged to or comprised the estate, or any portion thereof, of the said Scofield Buggy Co., at the time of the beginning of this suit, or of the execution of said chattel mortgage to this defendant, as this defendant is informed and believes; that no creditor of the said the Scofield Buggy Company, other than the said the Fifth National Bank of Grand Rapids, had any claim or lien thereon, or any right to the said money so received by the said the Fifth National Bank of Grand Rapids.

"And this defendant therefore asks, on behalf of the said the Fifth National Bank of Grand Rapids, that, upon the said receiver's declaring and paying a dividend herein, he may be directed by the order of this court to pay to the said the Fifth National Bank of Grand Rapids, or to this defendant for their benefit, a dividend upon the whole sum proved by the said the Fifth National Bank of Grand Rapids on the 10th day of December, 1890."

The mortgages given to High in trust to secure the several creditors therein named the several debts due to them, respectively, are valid securities in the trustee's hands. It is a sound principle of equity that the mortgagee is entitled to the whole mortgaged property as security for his debt, and that he has a right to have the whole avails of such security applied in payment thereof. Jones, Mort. § 707; *Spencer v. Waterman*, 36 Conn. 342; *Hague v. West Hoboken*, 23 N. J. Eq. 354. It is not claimed that the dividend which the receiver proposes to

pay is equal to the amount secured by the mortgages. No surplus will remain for the unsecured creditors out of the dividend now proposed to be paid. As the case stands at present, the trustee is entitled to be paid the whole dividend on the whole amount secured by the mortgages proved against the insolvent estate. How the avails in the trustee's hands shall be apportioned among the secured creditors is a subject that does not concern the receiver or the court. No one of the secured creditors has asked the aid of the court in the disposition of the dividend among themselves. Had the payments realized from outside securities reduced the mortgage indebtedness so that the avails of the assets in the receiver's hands would, upon such application being made to the payment of the mortgage debt, leave a surplus to be divided among unsecured creditors, if any such there are, then the question presented in *Southern Mich. Nat'l Bank v. Byles,* 67 Mich. 296, and *Third Nat'l Bank v. Haug,* 82 Id. 607, would arise and call for a decision. If the dividend is paid to the trustee of the mortgagees, the receiver will be safe, leaving the trustee and those interested in the trust to determine its ratable distribution among themselves.

The circuit judge had no authority, under the statute or general jurisdiction, to scale down the amount upon which the dividend should be paid to the Fifth National Bank, and his order to that effect must be reversed, with costs.

The other Justices concurred.