HIRAM M. HIGH v. THE FIFTH NATIONAL BANK OF GRAND RAPIDS ET AL.

[See 89 Mich. 15.]

*Mortgage—Trust—Distribution of proceeds of property—Assignment for benefit of creditors.*

1. A trustee to whom a corporation has executed valid mortgages to secure certain of its creditors prior to making a common-law assignment is entitled to be paid a dividend based on the whole amount secured by the mortgages proved against the insolvent estate, said dividend being less than said amount; and the question of its distribution among the creditors secured by said mortgages does not concern the receiver or the court.

2. A creditor who is secured for indebtedness due him from the mortgagor, and also in a given amount on account of the contingent liability of the mortgagor as indorser on notes held by such creditor, a portion of which have since been paid by the makers, is entitled on such distribution to a dividend based upon the full amount of each of said claims, not exceeding the sum remaining due thereon respectively.

Appeal from Clinton. (Daboll, J.) Argued June 20, 1893. Decided November 17, 1893.

Bill to determine the amount upon which a dividend shall be paid to the several creditors secured by trust mortgages. Defendants Pratt and American Wheel Company appeal. Decree modified and affirmed. The facts are stated in the opinion.

*Hiram M. High, in pro. per.*

*Henry E. Walbridge* and *Morris, Newberger & Curtis,* for appellants.

*Earle & Hyde,* for defendant Fifth National Bank.

HOOKER, C. J. The Scofield Buggy Company, being indebted to various persons, executed two mortgages— one of real estate, the other of chattels—to the complainant as trustee. The real-estate mortgage stated that—

" *Whereas,* the said Scofield Buggy Company is indebted to the parties in the sums respectively next below named, and are liable as indorsers upon certain customers' and business papers, discounted and used by sundry corporations and persons, as below stated, to wit: [Here followed a list of the creditors, with the amount of indebtedness due to each following his name, including "Fifth National Bank, Grand Rapids, Michigan, $5,500."] And are liable to said Home Savings Bank, as indorser upon commercial paper discounted, in the sum of $8,925.15; and for like indorsement of paper discounted at Fifth National Bank, Grand Rapids, to the amount of $19,000. * * *

" Now, therefore, the said first party, for and in consideration of the said indebtedness and liabilities to said parties, and in consideration of the sum of one dollar to it in hand paid by said Hiram M. High, trustee, party of the second part, * * * has granted * * * unto said Hiram M. High, trustee, party of the second part, and to his successors and assigns: * * * *Provided* always, and these presents are upon the express condition, that the said first party shall well and truly pay or cause to be paid to each and all of said parties, or to

said trustee for them, the amounts so due to them respectively, with interest thereon, and shall well and truly discharge or cause to be discharged each and every such contingent liability," etc.

The chattel mortgage contained similar recitals and provisions.

Soon after making these mortgages the Scofield Buggy Company made an assignment for the benefit of creditors. Under the decision of this Court *In re Assignment of Scofield Buggy Co.*, 89 Mich. 15, the receiver paid over to the trustee the amount realized by him upon sale of the property mortgaged. It may be said, in passing, that such payment was resisted upon the ground that the Fifth National Bank had received several thousand dollars upon the discounted paper alluded to in the mortgages, and it was contended by the receiver that this sum should be deducted from the claim of the Fifth National Bank, and should lessen the amount to be paid to the trustee. The Court held that, inasmuch as the amount realized from the property was inadequate to pay the claims secured upon it, the trustee was entitled to the whole fund, and that it was of no concern to the receiver how it was divided among the secured creditors. In this case the claim is made that the amount received by the Fifth National Bank should be deducted from its original claim, and that the reduced amount should constitute its credit for the purpose of the apportionment of the fund among the creditors. The circuit court held otherwise, and two of the secured creditors appeal.

The former decision recognizes the rule that a mortgagee is entitled to the whole mortgaged property as security for his debt. While payment of a part reduces the debt, it proportionately increases the value of the security. And had the claim of the Fifth National Bank been fully paid, the trustee would still have been entitled to the full fund,

if required to pay the other secured claims. Such decision also says:

"The mortgages given to High in trust to secure the several creditors therein named the several debts due to them, respectively, are valid securities in the trustee's hands."

Equitably, each creditor had a mortgage, concurrent in point of time with the others, for the amount of his debt. This statement should perhaps be qualified by the fact that the mortgage separated the claims based upon indorsed paper from other indebtedness held by the same creditor. As to such, we think the creditor stood in the position of holding separate mortgages for the two claims, the effect of which would be that the full payment of either would extinguish the security of the creditor upon that claim. In other words, it could not be used to increase his percentage upon the other claim. But, until a claim was extinguished, he would be entitled to apply the full share of the security for that claim, as provided by the terms of the mortgage, to the payment of the balance of such claim. If $19,000 was the amount of such indebtedness, that sum was to be used in computing the dividend to be applied to the payment of such claim, although a part of the claim had been paid, so long as the payment had not been made from the mortgaged property. This is but the application of the common doctrine that a person is entitled to the whole of his security.

It may be said that the aggregate of discounted paper should not be treated as one debt, but that each note discounted should be considered as a separate and distinct mortgage, the security and debt to be extinguished to the amount of such paper when paid. The mortgage secures many claims. It does not specify the items which go to make up the amount secured, except generally. It groups one class of the claims of the Fifth National Bank

under the name of indebtedness, another under the name of liabilities. It does not itemize the specific items of indebtedness, or the several papers discounted which go to make up the $19,000 liability. It may be that each represents a single transaction; but, if not, why not treat the $5,500 indebtedness as several debts if the discounted paper is to be so treated? Again, if such a construction of the mortgage can be adopted, it is apparent that the creditor having an indebtedness of a single item has an advantage over the one whose claim is made up of many, for, while the former may have the benefit of his whole security to the last dollar of his claim, the latter must submit to having it reduced every time that one of the items of his indebtedness is paid in full. If such is the law, why should not the doctrine be applied in cases where several distinct notes are secured by one mortgage? We think that the mortgagor settled the question of how these items should be treated when it gathered them into two groups. Thenceforth the creditor had the right to treat them as two claims. It cannot be said that security for an indebtedness as indorser is any less a security than security for another as maker of a paper. It may be admitted that the holder of the former has an advantage over the holder of the latter, for the reason that he has a claim upon the maker of the paper; but the security is none the less his, nor is it governed by any other rule than that of the other. The mortgagor has seen fit to give him such advantage. If he could lawfully do this, the creditor cannot be deprived of the legitimate benefit of such security. He may be required to resort to the maker of the paper first, or yield up his additional security for the general good, but he cannot be deprived of the security which the mortgage gives him, except by its application upon his debt.

In *Evertson v. Booth*, 19 Johns. 486, it is said by

Spencer, C. J., that the equitable rule that the creditor must exhaust his exclusive security before resorting to that which is common is not to be enforced if it will in the least impair the prior creditor's right to raise his debt out of both funds; and he adds: "I know of no principle of equity which can take from him any part of his security until he is completely satisfied." See, also, Story, Eq. Jur. § 633.

In *Mason v. Bogg*, 2 Mylne & C. 448, Lord Cottenham says in a case of the administration of the insolvent estate of a deceased person:

"A mortgagee has a double security. He has a right to proceed against both, and to make the best he can of both. Why he should be deprived of this right because the debtor dies, and dies insolvent, it is not very easy to see."

In *Kellock's Case*, L. R. 3 Ch. 769, 777, it is said:

"This court is not to depart from its own established practice, and vary the nature of the contract between mortgagor and mortgagee, by analogy to a rule which has been adopted by a court having a peculiar jurisdiction, established for administering the property of traders unable to meet their engagements, which property that court found it proper and right to distribute in a particular manner, different from the mode in which it would have been dealt with in the court of chancery.    *    *    * We are asked to alter the contract between the parties by depriving the secured creditor of one of his remedies, namely, the right of standing upon his securities until they are redeemed."

See, also, *People v. Remington*, 121 N. Y. 328.

In *Miller's Appeal*, 35 Penn. St. 481, a debtor executed a general assignment for the benefit of creditors. Subsequently he became entitled to a legacy, which was attached and recovered by one of his creditors for whose benefit the assignment was made. It was held that such creditor was, nevertheless, entitled to a dividend out of the assigned

estate on the whole amount of his claim at the time of the execution of the assignment; and, further:

"A creditor is entitled to a dividend under an assignment, not merely as a creditor, but as an equitable owner of the assigned estate; and the extent of his ownership is fixed by the amount of his claim when the assignment is made."

To the same effect is *Keim's Appeal*, 27 Penn. St. 42.

The case of *Midgeley v. Slocomb*, 32 How. Pr. 427, recognizes the doctrine, but applied the rule contended for in this case in view of the peculiar terms of the assignment.

The case of *Third Nat'l Bank v. Lanahan*, 66 Md. 461, is relied upon to support appellants' contention. In that case a general assignment was made to a trustee for the benefit of creditors. Among the assets were some notes which had been deposited with complainant, a bank, as collateral security to obtain advances upon the debtor's notes. Upon these notes the bank realized largely before filing its claim. The court held that the amount should be deducted from the amount claimed by the bank, saying:

"It is simply the case where a portion of a debt is paid by property of the debtor *which had been pledged* to secure its payment."

But in the present case the attempt is made to deprive a party of a portion of his security because the debt secured has been partly paid, although that payment *was not made from the property mortgaged*. We think that the Fifth National Bank would be entitled to a dividend based upon each of its two claims, subject to the proviso that neither should exceed the amount remaining due upon such claim. As we cannot determine from the record whether the amount apportioned to the Fifth National Bank, if rightly applied upon its claims, would more than liquidate either

of such claims, we are unable to do more than to indicate the principles upon which such fund shall be apportioned.

The cause will therefore be remanded to the circuit court, in chancery, to distribute the fund in accordance with the views herein expressed. The Fifth National Bank will recover its costs of this Court from the fund.

LONG and GRANT, JJ., concurred with HOOKER, C. J.

MONTGOMERY, J. (*dissenting*). On the 19th of September, 1890, the Scofield Buggy Company executed two concurrent and collateral mortgages to the complainant as trustee for certain named creditors. One mortgage was upon real estate, the other upon personal property. The real-estate mortgage contained the following recitation:

"*Whereas*, the said Scofield Buggy Company is indebted to the parties in the sums respectively next below named, and are liable as indorsers upon certain customers' and business papers, discounted and used by sundry corporations and persons, as below stated, to wit."

Here followed a list of creditors, including the Fifth National Bank of Grand Rapids, $5,500, and the further statement: "And are liable for indorsement of paper discounted at the Fifth National Bank, Grand Rapids, to the amount of $19,000." The mortgage was upon the condition that if "the said first party shall well and truly pay or cause to be paid to each and all of said parties, or to said trustee for them, the amounts so due to them respectively, with interest thereon, and shall well and truly discharge or cause to be discharged each and every such contingent liability, on or before the 1st day of October, 1890, and shall also pay or cause to be paid all taxes and assessments of whatever nature which may be levied upon said premises above described as soon and as often as the same may become due and payable, * * * then these presents and said indebtedness shall cease and be null and void." The mortgage contained a further express

stipulation to "pay said amount, with interest, and discharge or cause to be discharged said contingent liabilities, as above provided." The chattel mortgage contained the same recitation as to indebtedness, and stated that the mortgage was given "for the purpose of securing said debts and the interest thereon to the said parties thereof jointly and severally, and for the purpose of securing said contingent liability, and each and every one of them, jointly and severally, equal with the said other indebtedness."

The trustee has realized from the securities a sum insufficient to pay the whole indebtedness due and owing to the creditors secured by the mortgages, and remaining unpaid. It appears that a portion of the $19,000 of notes held by the Fifth National Bank was paid by the makers of the notes which had been indorsed by the mortgagor, and the question presented is whether, in the distribution of the avails of the securities, the bank is entitled to its *pro rata* share upon the sum which the mortgages were originally given to secure, or upon the amount remaining due and unpaid of the collateral notes added to the amount of its original indebtedness.

I think it clear that the distribution should be made upon the basis of the amount remaining due to the creditors when the fund comes into the hands of the trustee. The effect of the mortgage was not to transfer to the creditors 'the property named in aliquot parts proportioned to the amount then owing by the mortgagor to the parties and upon which the mortgagor was contingently liable, but it was given as a security which applied equally as to all indebtedness. Many of the items of indebtedness due to the bank were paid and discharged by the makers of the obligations. This discharged the indebtedness, and relieved the buggy company of the contingent liability. When the indebtedness ceased, the security of necessity

ceased to exist as a security for the payment of that indebtedness. At the time when the fund was ready for distribution, the indebtedness to the bank, which was originally $22,558.19, had been reduced by payments made by the makers of the paper indorsed by the Scofield Buggy Company, amounting to $8,295.20, leaving a balance due of $14,262.99. To the extent that the paper had been retired the security had fulfilled its purpose, which was to indemnify the bank against loss upon each of the items of paper. The mortgage did not fix the indebtedness or create any indebtedness. It was simply intended as security for the direct indebtedness, and as an indemnification against loss upon paper upon which the buggy company was contingently liable. The case does not fall within that class of cases to which *Third Nat'l Bank v. Haug*, 82 Mich. 607, and *Southern Mich. Nat'l Bank v. Byles*, 67 Id. 296, belong, in which it is held that a creditor holding two securities will not be required to relinquish either before he is entitled to enforce the other. The cases proceed upon the ground well stated by Mr. Justice CAHILL, namely, that the holder of the security would have a legal right to proceed against the debtor personally, and realize from him the whole amount of his debt, or as much as he could, without reference to his security. That was true of the case then under consideration, which was a case of general assignment, and the creditor proving his claim being one who held collateral security for the amount of the debt. The same reasoning was adopted by Gray, J., in *People v. Remington*, 121 N. Y. 328, in which case it was said:

"The agreement between the debtor and the creditor was that the debt should be paid. That debt is a definite quantity, and nothing less than its full amount can be said to be the debt. It is not altered or affected in its amount because the creditor may hold some collateral security. That is not a factor of the debt, but merely an incident to the debt. The very force and meaning of a

collateral security are in the idea of a guaranty of the performance of the principal agreement, which was to pay the debt. * * * As between the creditor and his debtor, the latter could not compel the former to resort first to his collaterals before asserting his claim by a personal suit. * * * Then, on what principle can we hold that, because the debtor becomes insolvent, the contract with his creditor is changed, and that the creditor cannot, under those circumstances, enforce his direct claim against the debtor until he has realized on his securities?"

It was held, in accordance with the doctrine of *Third Nat'l Bank v. Haug,* that the creditor's right could not be so postponed. But this case is different. Certainly the bank here could not proceed against the Scofield Buggy Company upon the notes which are extinct by reason of their payment by the makers. The security, which is a mere incident to the debt, is a security for the unpaid portion of the indebtedness. No case is cited, nor have I been able to find one, in which it has been held that a debt which has been paid and discharged can be revived and resuscitated for the purpose of enabling the former holder to avail himself of a security for its payment; much less can I discover any equity or any reason in principle for holding that an engagement for indemnity, although coupled with a security for the payment of a debt, can be made use of to enlarge the debt, and to swell the dividend which the holder of the security is entitled to receive, as against those concurrently secured, either by the same instrument or otherwise.

In my opinion, the decree below should be reversed, and one entered in this Court in accordance with these views.

MCGRATH, J., concurred with MONTGOMERY, J.