## STEPHENS v. LEONARD.

122   125
p122  382

122   125
126   378
126   379

122   125
s80NW1002

1. HUSBAND AND WIFE—DOWER—CONTRACT PURCHASER.

  Under 3 Comp. Laws 1897, § 8918, giving the widow dower in all lands whereof her husband was seised of an estate of inheritance at any time during the marriage, a wife is not dowable in lands held by her husband under contract of purchase, the legal title remaining in the vendor.

2. SAME.

  A contract purchaser of land, at whose direction the vendor conveys the land to a third person as security for money to complete payment of the purchase price, is not seised of a legal title, so as to entitle his wife to dower therein.

3. SAME—ALIENATION OF HOMESTEAD—SIGNATURE OF WIFE.

  A writing signed by a contract purchaser of land and by his wife, directing the vendor to make the deed to a third person, is effectual to cut off the wife's homestead rights, under 3 Comp. Laws 1897, § 10363, which provides that a mortgage or "other alienation" of the homestead, to be valid, must bear the signature of the wife.

4. MORTGAGES—PARTIAL RELEASE—FORECLOSURE.

  Where a mortgage of a homestead and other property, given to secure the payment of eight notes of equal amount, contains a provision that, on payment of the three notes first maturing, the homestead shall be released, the property other than the homestead is alone liable, in case of payment of such three notes, for the balance of the debt; but, if such notes are not paid, the mortgagee may claim the whole as security, and will not be required to release the homestead in case enough should be realized from a sale of the other property to pay the three notes in question.

Appeal from Wayne; Frazer, J. Submitted October 26, 1899. Decided December 2, 1899.

Bill by Albert L. Stephens against Henry R. Leonard and Annie E. Leonard to foreclose a mortgage. From a decree for complainant, defendants appeal. Affirmed.

*Wells, Angell, Boynton & McMillan,* for complainant.

*George W. Radford,* for defendants.

MONTGOMERY, J.   In 1894 the Leonard & Carter Furniture Company purchased from Thomas T. Leete and wife, on land contract, 30 feet front on Gratiot avenue, Detroit (referred to in the record as the "Gratiot-Avenue Property").   The purchase price was $40,000, upon which $5,000 was paid down.   The defendant Henry R. Leonard, on the 1st of April, 1890, had bought from the trustees of the Brush estate a lot on Eliot street, Detroit (called in the record the "Eliot-Street Property"), at the price of $5,830, only $830 of the purchase price having been paid. The furniture company had erected a building on the Gratiot-avenue lot at a cost of about $60,000, and Mr. Leonard had built a residence on the Eliot-street property. In February, 1895, Mr. Leonard desired to purchase the interest of the Leonard & Carter Furniture Company, and, in order to raise the money to do so, gave the complainant the securities in question in this case to secure a loan of $40,000.   It appears that the trustees of the Brush estate had assigned the contract for the Eliot-street lot to the State Savings Bank, and had executed a deed running to Leonard, which was left at the bank, to be delivered when the payments were completed.   To secure complainant, the contract from Leete to the Leonard & Carter Furniture Company was assigned by it to Leonard, and by Leonard to complainant.   The deed of the Eliot-street lot from the trustees of the Brush estate to Leonard, which had been prepared, but not delivered to Leonard, was destroyed, and a new deed made by the trustees direct to complainant, complainant paying the unpaid purchase money.   Mr. and Mrs. Leonard signed the following authority:

"DETROIT, February, 1895.
"TRUSTEES BRUSH ESTATE:
   "We hereby surrender to you deed dated February 8, 1893, conveying to Henry R. Leonard lot 15, and the

easterly 3 feet of lot 14, in block 10, Brush Farm, and instruct you to make a deed for the same-described premises to Albert L. Stephens, of Detroit, Michigan.

[Signed]   " ANNIE E. LEONARD.

"HENRY R. LEONARD."

Eight promissory notes, in the sum of $5,000 each, were executed by Mr. Leonard, and an agreement was signed by the parties, in which, after reciting the above-named transfers to Stephens and the advances for which they were security, it was provided, among other things, that, upon payment of the first three of the notes, the Eliot-street property should be reconveyed to Leonard. This agreement also provided that Leonard should pay all the taxes, and should keep the property insured, $10,000 on the Eliot-street house, and $30,000 on the Gratiot-avenue building, with loss, if any, payable to Stephens. On the 17th of October, 1897, the store building on Gratiot avenue burned. Only $10,000 insurance was carried on the building, and this proved valueless. Mr. Leonard defaulted in his payments, and complainant filed this bill to foreclose. The court decreed foreclosure, and defendants appeal.

There is only one disputed question of fact which we regard as material in disposing of the case. It is claimed by Mrs. Leonard that she signed the authority to the trustees of the Brush estate above quoted without understanding the purpose for which it was to be used. Indeed, she testifies that she has no recollection of having signed the paper; that she at times did sign papers presented to her by her husband without reading them, and she seems unable to account for her signature to this paper except on the hypothesis that this was one of the occasions. The complainant testifies that, in company with Mr. Hayes, president of the Preston National Bank, he called at the Leonard home, and that the subject of the loan was fully talked over in the presence of Mrs. Leonard, and her attention specially called to it. In this he is corroborated by Mr. Hayes. Mr. and Mrs. Leonard deny that any

such interview took place. A careful reading of the testimony convinces us that Mr. and Mrs. Leonard are at fault in their recollection on this point, and that Mrs. Leonard did fully understand the nature of this transaction, and assented to it, so far as it affected the Eliot-street house, by signing the authorization above referred to.

It is contended that the defendant Annie E. Leonard had a dower interest in the Gratiot-avenue lot, which was not cut off by the assignment of the contract; that she not only has a dower, but a homestead, interest in the Eliot-street lot, and that neither has been barred. The rights of Leonard in each of the two descriptions of property were those of a contract purchaser, the legal title remaining in another. The question is, therefore, whether the purchaser of lands under a land contract has such a title as to vest in the wife an inchoate dower right. The statute (section 8918, 3 Comp. Laws 1897) reads as follows:

" The widow of every deceased person shall be entitled to dower, or the use during her natural life of one-third part of all the lands whereof her husband was seised of an estate of inheritance at any time during the marriage, unless she is lawfully barred thereof."

Under this section, the wife of the contract purchaser, who has no legal title to lands, is not entitled to dower. *Daily* v. *Litchfield*, 10 Mich. 29; *Beebe* v. *Lyle*, 73 Mich. 114. See, also, 1 Scrib. Dower, p. 413 *et seq.*

Defendants' counsel insists that Leonard was seised of a legal title, inasmuch as Stephens' title under his contract and deed was only equitable. The fact is, however, that there never was a complete conveyance by Leete, the holder of the original title of the Gratiot-avenue property, to the defendant, nor was there such a conveyance by the trustees of the Brush estate of the Eliot-street property. The legal estate has never rested in the defendant Henry R. Leonard in either case. Counsel cites the case of *Clapp* v. *Galloway*, 56 Mich. 272, as authority for the claim that a widow is dowable in lands held by her husband under contract of purchase. It would seem

that the utterance of Mr. Justice SHERWOOD in that case was *dictum*. It is not in harmony with the decisions in this State, both before and after.

The homestead right is open to other considerations. It is conceded that the defendant Annie E. Leonard had a homestead right in the Eliot-street property, but it is contended that it was subjected to complainant's claim by her, intelligently and legally. Under section 10363, 3 Comp. Laws 1897, the homestead right may be cut off by a mortgage or other alienation of the land, signed by the wife. In this case there was a written authority, signed by both husband and wife, directing the owners of the legal title to convey the same to complainant. This was an effective and legal mode of alienating the homestead.

The decree includes a charge for expense incurred in caring for the Gratiot-avenue property after the fire, and for interest on the Leete contract. Defendants contend that these two items should not, in any view of the case, be made a charge against the homestead. We think these items are clearly proper charges. The security is upon the whole property, and is not severable. The agreement between Stephens and Leonard contained a promise that, upon payment of the first three notes maturing, Stephens would release the Eliot-street lot. It is now contended that complainant is bound to collect the amount of the first three notes from the Gratiot-avenue property, and, if the amount of the three notes is realized by a sale of the property, the Eliot-street property is released. If the contract be so construed, the homestead has at no time been a security for any portion of the claim, if we recognize the fact that the interest in the Gratiot-avenue property is worth more than the amount of the first three notes, as it doubtless is. This view does violence to the intention of the parties. The mortgagee is entitled to the whole mortgaged property as security. *In re Scofield Buggy Co.,* 89 Mich. 15; *High* v. *Fifth National Bank,* 97 Mich. 502 (21 L. R. A. 822). The true intent of this provision was that if, while the security of the Gratiot-avenue prop-

erty remained, the defendant paid down the first three notes, the complainant would accept the Gratiot-avenue property as sufficient security for the remainder of the claim, and release the Eliot-street lot. *Pierce* v. *Kneeland*, 16 Wis. 672 (84 Am. Dec. 726); *Commercial Bank of Iron Mountain* v. *Hiller*, 106 Mich. 118. The decree provides that, if the defendant pay the amount of the first three notes and interest before sale, the Eliot-street lot shall be released. This is sufficiently favorable to defendants.

The decree is affirmed, with costs.

The other Justices concurred.