LEONARD *v.* WAYNE CIRCUIT JUDGE.

MORTGAGES — SEPARATE TRACTS — FORECLOSURE DECREE — COMPELLING ENFORCEMENT.

A mortgage covered two pieces of property.   After a decree of foreclosure, the interest of the mortgagor in one of the pieces was sold at a receiver's sale at the instance of a judgment creditor, and the sale was confirmed; the creditor becoming the purchaser.   Thereafter he sold the interest of the mortgagor in the other piece under execution, and became the purchaser at such sale.   Valuable improvements were made by him upon the first piece.   The time for redemption from the execution sale not having expired, the mortgagor moved to compel the mortgagee to sell under his foreclosure decree

so that he could ascertain the amount of the lien on the second piece (the decree directing that the other should be first sold), and the amount of any deficiency there might be. The mortgagee filed a consent that, when the title of the purchaser at the execution sale should become absolute, or when the mortgagor should redeem the premises from the sale, the mortgagee would release all interest in the property vested in him by the foreclosure decree; and an order was thereupon entered confirming the stipulation and denying the motion. *Held*, that the rights of the mortgagor were sufficiently protected.

*Mandamus* by Henry R. Leonard and Annie E. Leonard to compel Robert E. Frazer, circuit judge of Wayne county, to enter an order directing a sale under a decree of foreclosure. Submitted March 21, 1901. Writ denied April 25, 1901.

*George W. Radford*, for relators.

*Wells, Angell, Boynton & McMillan*, for respondent.

HOOKER, J. Leonard borrowed from Stephens $40,-000 upon two pieces of real property, which, for convenience, we will call "Gratiot" and "Eliot," respectively, from the streets upon which they were located. The legal title to these parcels was never vested in Leonard, being placed in the lender, Stephens, as security for the $40,000, at Leonard's request, by the persons whose contracts Leonard held. Stephens commenced the foreclosure of his mortgage in February, 1898, taking a decree of the circuit court on February 27, 1899, which was affirmed on December 2, 1899. *Stephens* v. *Leonard*, 122 Mich. 125 (80 N. W. 1002).

Leonard was indebted to the Preston National Bank, which obtained judgment on its claim in April, 1898, and in May, 1898, it caused an execution to be levied upon Leonard's interest and title in both parcels; and as Leonard had, prior to the rendition of said judgment, conveyed Eliot to his wife, the Preston Bank filed a bill in aid of its execution, and had a receiver appointed for

Leonard.   In November, 1898, the receiver filed a petition for leave to sell Gratiot, which was incumbered by the ruins of a costly business building.   A hearing was had, and upon an order then made the property was sold, and the sale was confirmed on April 17, 1899.   The Preston National Bank was the purchaser.   No appeal from this order was taken, and, while the record is silent upon the subject, we infer that the proceeds were held to await the final decree in the case.   Upon final hearing of the case in this court (122 Mich. 381, 81 N. W. 264), the transfer of Eliot to Mrs. Leonard was held void as to the bank, except as to homestead rights, and our decree permitted the sale of Eliot on the execution, subject to the homestead rights, and confirmed the receiver's sale of Gratiot; and Eliot was sold to the bank for $12,500 in June, 1900. Presumably both parcels are held by the bank subject to the lien of Stephens' decree.

We find, then, that the bank was the purchaser of Leonard's interest in both parcels,— Gratiot at receiver's sale, in April, 1899, and Eliot at execution sale, in June, 1900.   Stephens' decree in the foreclosure case has not been followed by sale.   As stated, Gratiot was visited by a disastrous fire, and sometime afterwards, in order to prevent loss and damage to his interest, and that of Leonard, in the property, and possible damage to adjoining property, Stephens entered and expended money upon the property by the express authority of Leonard, and the sum expended by Stephens was allowed upon the hearing of the case of *Stephens* v. *Leonard*, 122 Mich. 125 (80 N. W. 1002).

In October, 1900, Leonard made a motion in the circuit court for an order to compel Stephens to sell the property under his decree in the foreclosure case.   He claims that this is necessary, so that he may ascertain after the sale of Gratiot how much of the decree shall remain a lien upon Eliot, and also, if both shall be sold, how much of a deficiency will remain a personal liability.   Leonard has no interest left in Gratiot, except the right to have it sold

and applied before Eliot shall be sold under the foreclosure decree. He has no right of redemption of Gratiot; for that was sold by the receiver, and the purchaser's title has been confirmed. At the time this motion was heard, the solicitors for Stephens filed a consent, in writing, on behalf of their client, that an order might be entered that when the title of the purchaser of Eliot at the execution sale should become absolute, or when Leonard should redeem the premises from said sale according to law, Stephens should release, by appropriate conveyance to the purchaser, or to Leonard, all of the interest in said property vested in him by the foreclosure decree. Thereupon an order was entered reciting the receiver's sale and confirmation and said stipulation, and providing that, in the contingency mentioned in said stipulation, complainant should release Eliot in conformity thereto, and denying Leonard's motion. Leonard has asked a *mandamus* to compel the circuit judge to vacate the order made in the premises and grant the motion.

The bank owns the equity of redemption in Gratiot, the primary fund in the foreclosure proceeding. Since purchasing it there has been expended a large sum in restoring the building thereon, and its value has been correspondingly enhanced. As between the bank and Leonard, the sum so spent cannot equitably be applied upon Leonard's mortgage. It is claimed that the secret of Leonard's effort to compel the sale of Gratiot is to get the benefit of this expenditure in reduction of his mortgage. If this can be accomplished, it may be profitable to redeem Eliot, when otherwise it might not. The stipulation and order, if valid, release Eliot from the lien of the decree, and it may be that the defendant Leonard is released from liability for a deficiency, should there be one. We think that Stephens is bound by this order, and therefore that it is unnecessary to know how much Gratiot will pay before redeeming Eliot, if that is petitioner's object. While one has a right to pay his debts when due, thereby extinguishing liens upon his property, he has not usually

the right to require his creditor to institute legal proceedings for the purpose. We have seen that Leonard has a mere equity of redemption in Eliot. That will be cut off if he shall fail to redeem from the execution sale. Then the bank's title to Eliot will become absolute, as it has already to Gratiot, subject to the Stephens mortgage. Then the bank only will have an equity of redemption in Eliot as against the mortgage, as it has now in Gratiot, and by mere payment of the decree it would acquire a perfect title. Stephens may expect such a payment, and it may be that it is already agreed upon; but, whether it is or not, we think that he cannot be required to expend money in pursuing his foreclosure proceedings further than his interests demand, and that we should not aid Leonard to profit through an application of the bank's money, expended upon Gratiot, to his mortgage.

The order of the circuit court is affirmed, and the writ is denied.

The other Justices concurred.