## DETROIT TRUST CO. *v.* BAKER.

1. SPECIFIC PERFORMANCE — HUSBAND AND WIFE — ANTENUPTIAL
    CONTRACT—FRAUD—EVIDENCE—SUFFICIENCY.

    In a suit by the executor of the will of a deceased hus-
    band against the wife for the specific performance of an
    antenuptial contract, defendant's claim that she was in-
    duced to enter into said contract by the fraudulent repre-
    sentation that it was a power of attorney, *held*, not sup-
    ported by the evidence.[1]

2. FRAUDS, STATUTE OF—ANTENUPTIAL CONTRACT.

    Where an antenuptial contract was executed by the con-
    tracting parties providing for acceptance by the pros-
    pective wife of a pecuniary amount in lieu of dower, the
    fact that the supplementary agreement, referred to there-
    in, fixing the amount of the pecuniary obligation to be
    paid to the prospective wife, was signed by the prospective
    husband alone, does not render the agreement void under
    the statute of frauds, since both writings referred to one
    matter, and must be construed as if the pecuniary obli-
    gation had been written at the foot of the agreement.[2]

3. HUSBAND AND WIFE—ANTENUPTIAL CONTRACT—FRAUD NOT PRE-
    SUMED FROM SUM FIXED IN LIEU OF DOWER.

    In the absence of any testimony showing false repre-
    sentations, deceit, or the withholding of information, in
    the execution of an antenuptial contract, the court may
    not predicate a finding of fraud or an abuse of the con-
    fidential relation growing out of the promise to marry,
    merely upon the sum agreed upon, which was a substantial
    one.[3]

4. WITNESSES — MATTERS EQUALLY WITHIN KNOWLEDGE OF DE-
    CEASED.

    In a suit for the specific performance of an antenuptial
    contract, testimony by the wife as to matters equally
    within the knowledge of her deceased husband was barred
    by the statute (3 Comp. Laws 1915, § 12553).[4]

5. SAME—ADMISSIONS.

    While the wife's testimony, in reply to testimony as to
    claimed admissions and statements made by her after
    her husband's death, was admissible upon the question

[1]Husband and Wife, 30 C. J. § 246; [2]Frauds, Statute of, 27 C.
J. § 310; [3]Husband and Wife, 30 C. J. § 246; [4]Witnesses, 40 Cyc.
p. 2312.

of whether or not she made them, it was not admissible to constitute substantive evidence to sustain her charge of fraud, on the theory that the bar of the statute was waived by said testimony as to her claimed admissions.[5]

6. HUSBAND AND WIFE—VALID ANTENUPTIAL CONTRACT NEED NOT CONFORM TO STATUTE.

Whether a valid antenuptial contract barring a prospective wife's right of dower complies in form with the statute (3 Comp. Laws 1915, §§ 11663-11666) is immaterial, since the statute does not, either in terms or intent, establish the sole form or method to be employed, but is in the nature of a recognition of all valid antenuptial agreements.[6]

7. DOWER—VENDOR'S INTEREST IN LAND CONTRACTS DESCENDS AS PERSONALTY.

The interest of the vendor in a land contract, upon his death, goes to his administrator as personalty, and does not descend as real estate to the heirs of the vendor, and, therefore, is not a subject of dower; overruling, so far as in conflict herewith, *In re Estate of Pulling*, 97 Mich. 375.[7]   BIRD, SHARPE, and MOORE, JJ., dissenting.

8. WILLS—WIDOW WHOSE DOWER RIGHT WAS BARRED ENTITLED TO SHARE IN MONEY RECEIVED AND TO BE RECEIVED FROM LAND CONTRACTS.

A widow, who by antenuptial contract released her dower right in her husband's lands but not her rights in his personal property, having elected to take under the statute instead of under the will, is entitled to her distributive share of the personal property, as widow, including the money received and to be received by the executor upon land contracts executed by the deceased.[8]   BIRD, SHARPE, and MOORE, JJ., dissenting.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted October 30, 1924.   (Docket No. 117.) Decided April 10, 1925.   Rehearing denied July 16, 1925.

Bill by the Detroit Trust Company, executor of the last will of Herbert L. Baker, deceased, and others against Louise C. Baker for the specific performance

[5]Witnesses, 40 Cyc. p. 2339; [6]Husband and Wife, 30 C. J. § 182; [7]Dower, 19 C. J. § 46; Executors and Administrators, 23 C. J. § 346; [8]Wills, 40 Cyc. p. 1989.

of an antenuptial agreement.    Defendant filed a cross-
bill to set aside such agreement on the ground of fraud.
From a decree for plaintiffs, defendant appeals.    Af-
firmed in part and reversed in part.

*Miller, Canfield, Paddock & Stone,* for plaintiffs.

*Welsh, Bebout & Lee,* for defendant.

WIEST, J.    This is a suit for specific performance
of an antenuptial agreement, made by Herbert L.
Baker and Cora Louise Turner, now Louise C. Baker,
as follows:

"Antenuptial agreement, made this tenth day of
February, A. D. 1917, between Herbert L. Baker of
Detroit, Michigan, party of the first part, and Cora
Louise Turner, party of the second part, witnesseth:

"Whereas the said parties are intending to enter
into the bonds of matrimony with each other and are
desirous of making a pecuniary provision for the
benefit of said second party in lieu of dower.

"Now, therefore, it is mutually agreed as follows:
Said first party agrees to make out of his estate the
pecuniary provision which is set forth and described
in a certain agreement of even date herewith executed
by him and accepted by said second party, whereby
said second party becomes entitled to the payment to
her of the sum therein named out of the estate of said
first party in lieu of dower in case she shall survive
him as his widow.

"And said second party hereby acknowledges the
receipt of said pecuniary provision in lieu of dower
and in consideration thereof agrees to and hereby does
release and bar all claim or claims of dower which upon
the death of said first party she as his widow might
otherwise have in any and all lands of which he now
is, or hereafter may become owner, either in fee or
otherwise, and wheresoever situated.

"In witness whereof, the said parties have hereunto
set their hands and seals the day and year first above
written.

                    "HERBERT L. BAKER.      (L. S.)
                    "CORA LOUISE TURNER.    (L. S.)"

This was acknowledged before a notary by Mr. Baker, April 19, 1917, but not at any time by Mrs. Turner. The pecuniary provision executed by Mr. Baker was as follows:

"Agreement made this..............day of February, A. D. 1917, between Herbert L. Baker, party of the first part, and Cora Louise Turner, party of the second part, the same being the agreement referred to in a certain agreement between said parties for release of dower and bearing even date herewith.

"Witnesseth as follows:

"Said first party agrees that in case she shall survive him as his widow the said second party shall thereupon be entitled to receive out of his estate the sum of ten thousand dollars the same to be paid to her as a creditor of said estate the same in all respects as other creditors thereof are paid.

"And said second party agrees to and hereby does accept the foregoing provision in lieu of any and all dower rights to which she might otherwise become entitled as the widow of said first party.

"In witness whereof the parties have hereunto set their hands the day and year first above written.

"HERBERT L. BAKER. (L. S.)<br>(L. S.)"

Mr. Baker at the age of 71 years, and Mrs. Turner at the age of 31 years, were married at Windsor, Ontario, April 21, 1917, and lived together in the city of Detroit, where Mr. Baker was an attorney-at-law, until his death June 9, 1921. November 30, 1920, Mr. Baker made his will in which he bequeathed to his wife the household effects, except in the room of his sister, and placed the residue of his estate, about $300,000, in trust, making the Detroit Trust Company trustee, with directions to pay his wife two-fifths of the net income therefrom during her life, so long as she remain unmarried, and the other three-fifths, one-fifth each to his sister, a niece, and a nephew. This provided an income of about $6,000 a year for defendant. Defendant by cross-bill asserted she was induced to sign the agreement by Mr. Baker fraudu-

lently representing it was a power of attorney; that she refused to sign the writing fixing the pecuniary consideration, had filed her election not to take under the will and asked for decree voiding the agreement and granting her a widow's rights in the estate, including dower.    Decree was granted plaintiffs and defendant appealed.

Counsel for defendant picture a crafty old lawyer wooing and winning an unsophisticated woman's promise of marriage, and then obtaining from her an antenuptial agreement under the fraudulent representation that it was a power of attorney.    We are not so impressed.    Defendant was a widow 31 years of age evidently without means and after the death of her first husband had acted as a store clerk and assistant bookkeeper.    Mr. Baker was an attorney-at-law of good standing and a man of means.    The evidence has been carefully read and we are persuaded that defendant's charge of fraud and imposition, practiced by Mr. Baker in obtaining her signature to the antenuptial contract, has not only no support in the evidence but is completely refuted by her statements to Mr. Newton and negatived in the most conclusive manner by the bounty of the very man she brands as a scoundrel.    If Mr. Baker deceived defendant by lying about the nature of the paper she signed, he must have had a change of heart after marriage when he made his will and provided her a splendid and sure income for life.    This does not accord with the character she would have us fasten to the man whose lips are closed in death.    We believe Mr. Newton told the truth, and defendant did say to him when she produced the antenuptial agreement and the pecuniary obligation, right after Mr. Baker's death, that she had always kept the obligation and had found the agreement among Mr. Baker's papers.    This being true, she knew all the time she had not signed a power of attorney, and was fully aware of what she did sign,

for the pecuniary obligation she held informed her it was an agreement giving her $10,000 out of his estate, in lieu of dower, in accordance with the agreement to that effect held by her husband. Defendant claims the statute of frauds renders the agreement void. We understand this claim rests upon the fact that defendant did not sign the writing declaring the pecuniary obligation. The point is without merit. Defendant signed the agreement and that was the only paper necessary for her to sign. The pecuniary provision was signed by Mr. Baker and that bound him and his estate. Both writings related to one matter and must be construed as if the pecuniary obligation had been written at the foot of the agreement. *Whittlesey* v. *Herbrand Co.*, 217 Mich. 625. Mr. Baker's estate is bound to pay the obligation and defendant can enforce payment. The agreement, signed by both parties, declared the existence of the pecuniary obligation writing and referred to it as "executed by him and accepted by said second party" (defendant). Defendant also claims the amount of the pecuniary provision was so inadequate, considering the means of Mr. Baker, as to speak of concealment of his wealth, and show imposition and fraud. The agreement related solely to dower and did not release Mr. Baker from any obligation of marriage or in any manner interfere with defendant's right to a widow's share in his personal estate. There is no sentiment in an antenuptial contract. It is a business proposition, animated by a desire to curtail or enlarge rights in property incident to marriage. Here the evident purpose was to curtail prospective rights of dower by way of pecuniary adjustment. The prime reason for such an agreement, and a proper one, could not move the parties, or exist, if an antenuptial agreement must provide for as much as the law allows, in the absence of an agreement. We find no *indicia* of fraud, by way of misrepresentation or concealment

or inadequacy in the amount agreed upon in lieu of dower. But it is said the sum given warrants the assumption that the confidential relation arising out of the promise to marry was abused. Conceding betrothal begets a confidential relation, it does not follow, *ipso facto*, that it engenders fraudulent desires in the swain, even though he be less bucolic than the widow about to be engrafted or that fraud is presumed to have been practiced to induce a widow of 31 to marry a man of 71, and agree to accept in lieu of prospective dower a substantial sum. In the absence of any testimony showing false representations, deceit or the withholding of information, we cannot predicate a finding of fraud or an abuse of the confidential relation, merely upon the sum here agreed. Neither does such sum, under the disclosed circumstances, require plaintiffs to rebut a presumption of fraud. Until some existence of fraud more substantial than a possible wrong guess is presented there is nothing for plaintiffs to rebut. Defendant was permitted to testify to matters equally within the knowledge of the deceased, in order to make the record for review, but the trial judge held such testimony inadmissible and refused to consider the same. In this the circuit judge was clearly right. The statute, 3 Comp. Laws 1915, § 12553, barred the defendant from testifying to any matter equally within the knowledge of the deceased. But defendant claims the bar of the statute was lifted by plaintiffs calling Mr. Newton to show admissions and statements made by her after the death of her husband, relative to the antenuptial agreement. Defendant's testimony in reply to such claimed admissions and statements was proper upon the question of whether she made them but did not and could not constitute substantive evidence to sustain her charge of fraud. *Campbell* v. *Sech*, 155 Mich. 634; *Harris* v. *Cable*, 113 Mich. 192. The statute did not close the lips of defendant while

out of court, and showing what she so said did not constitute a waiver in court and remove the seal from her lips placed there by the law. *Harper* v. *Corcoran*, 166 Mich. 474. It is claimed the antenuptial agreement does not comply with the statute (3 Comp. Laws 1915, §§ 11663-11666). Under the evidence we need consider only section 11665, which provides, in substance, that any pecuniary provision made for the benefit of an intended wife, and in lieu of dower, if the woman be of full age and express her assent by becoming a party to such an agreement, will bar her right of dower in all the lands of her husband. We think the agreement meets the statute; but whether so or not is of no moment, for it is clearly a valid antenuptial agreement, and the statute does not, either in terms or intent, establish the sole form or method to be employed. *Hockenberry* v. *Donovan*, 170 Mich. 370. The statute is in the nature of a recognition of all valid antenuptial agreements.

We find no occasion to discuss the question of whether defendant is to be held to have ratified the agreement. The agreement is valid and requires no ratification.

There remains the question of whether payments, upon land contracts executed by Mr. Baker, collected and to be collected by the executor, constitute personal estate, of which defendant takes a distributive share under the statute, she having elected not to take under the will, or, whether such land contracts and payments constitute real estate, in which she has barred her dower? The circuit judge held that land contracts in which Mr. Baker was vendor and now held by his estate, are deemed real estate and not personal, and defendant not entitled, as widow, to a distributive share of any moneys received or to be received thereon by the executor. The learned circuit judge appears to have followed the rule stated in *Re Estate of Pulling*, 97 Mich. 375. The rule there stated is not in line with the earlier decisions upon the nature of

the interest of a vendor in a land contract (*Wing* v. *McDowell*, Walk. Ch. 175; *Fitzhugh* v. *Maxwell*, 34 Mich. 138), and cannot be harmonized with decisions in the later cases of *Walker* v. *Casgrain*, 101 Mich. 604; *Bowen* v. *Lansing*, 129 Mich. 117 (57 L. R. A. 643, 95 Am. St. Rep. 427); *City of Marquette* v. *Iron & Land Co.*, 132 Mich. 130; *In re Stanton's Estate*, 142 Mich. 491.

We think the rule to be followed is stated in *Bowen* v. *Lansing, supra*, and we hold in accordance therewith, that the interest of the vendor in a land contract, upon his death, goes to his administrator as personalty, and does not descend as real estate to the heirs of the vendor, and, therefore, is not a subject of dower. *In re Estate of Pulling, supra*, so far as in conflict with this opinion, is overruled.

Defendant, having elected to take under the statute and not under the will, is entitled to her statutory distributive share of the personal estate, as widow, and this includes the right to so share in moneys received and to be received by the executor upon land contracts executed by the deceased.    In so holding we have assumed the land contracts are in the usual form, signed by both Mr. and Mrs. Baker after their marriage, grant purchasers possessory rights, carry the equitable title, obligate money payments by the vendees, and retain legal title in the vendor to secure such payments.

Plaintiffs are entitled to the specific performance granted in the circuit court and to that extent the decree is affirmed.    The holding in the circuit relative to the right of defendant to a distributive share of moneys received by the executor on land contracts executed by Mr. Baker is reversed.    This last mentioned subject being but incidental to the main issue, the plaintiffs will recover costs.

McDONALD, C. J., and CLARK, STEERE, and FELLOWS, JJ., concurred with WIEST, J.

SHARPE, J. (*concurring in part*).    The questions presented on this record are:

(1) Is the antenuptial agreement binding on defendant?

(2) Is she entitled to dower in the real estate of which her husband died seized?

(3) Is she entitled to dower in the real estate sold by her husband after marriage on land contract?

(4) What interest has she in the personalty?

I answer these in the order stated.

1. I concur with Mr. Justice WIEST in holding that the antenuptial agreement is binding upon her.

2. This agreement bars her right to recover dower in real estate owned by him at his death.

3. For a good and sufficient consideration she released her dower right in the lands sold by him under contract.    In legal effect she signed those contracts and, therefore, has no dower interest in the lands contracted to be conveyed.

4. I think she is entitled to her distributive share of the moneys received by the deceased on such contracts.    Such moneys have become a part of the personalty of the estate, and there was no agreement on her part to release any interest she might have therein.

A different question is presented as to moneys which the estate may receive from the vendees on such contracts.    I say, may receive, because the executor may be compelled to forfeit the contracts and thus regain an unincumbered title to the real estate.    In such event, it seems clear to me that defendant will not be entitled to a dower interest in the lands.    And if not so entitled, I can see no reason why she should recover a distributive share of the sums which may be paid to the executor by the vendees in performance of the contracts.    She agreed to accept the sum provided for her in the agreement as a consideration for her dower interest in these lands.    It is unfair

to those who benefit by the trust created by the testator to permit her to accept the consideration for her release and also secure a share of the after-acquired personalty, which is in effect that for which the consideration for her agreement will be paid to her.   I do not think she is entitled to any interest in the proceeds of these contracts which may be received by the executor.

The rule stated by Mr. Justice WIEST—

"that the interest of the vendor in a land contract, upon his death goes to his administrator as personalty and does not descend as real estate to the heirs of the vendor, and, therefore, is not a subject of dower,"

—will, I fear, lead to much confusion.   Under the statute (3 Comp. Laws 1915, § 11654):

"The widow of every deceased person shall be entitled to dower, or the use, during her natural life of one-third part of all the lands whereof her husband was seized of an estate of inheritance, at any time during the marriage, unless she is lawfully barred thereof."

Unless the widow has barred her right to dower by antenuptial agreement or by signing the contract, it is clear that her husband may not deprive her of such right by entering into a contract for the sale thereof. The statute gives her such right in express terms, and she may enforce it notwithstanding any conveyance which he may make, whether by deed or contract. Her right to dower in lands, under the statute, is not dependent upon whether her husband "was seized of an estate of inheritance" therein at his death, but enures to her if he was so seized "at any time during the marriage, unless she is lawfully barred thereof."

Under the facts here appearing, the widow has by her agreement barred her right to dower in lands sold under contract, and I cannot but feel that what has been said by both Mr. Justice WIEST and myself as

230—Mich.—36.

to her right of dower if there were no such bar is *obiter dictum* and should be omitted from both opinions.

The question presented in *Re Estate of Pulling*, 97 Mich. 375, is not here involved. It was there held that a widow was entitled to dower in the interest of her deceased husband in lands sold by him under contract *before their marriage*. We should not overrule this decision or even cast doubt upon the correctness of the holding under the facts before us.

As before stated, the dower rights of a widow are fixed by the statute. They rest upon the ownership of the husband in real estate "at any time during the marriage." The condition in which his interest in such real estate may be at the time of his death, whether or not it will then descend to his heirs as real estate or pass to his representatives as personalty, is in no way controlling of her right to dower as fixed and defined by the statute.

In *Stephens* v. *Leonard*, 122 Mich. 125, wherein the claim was made that the widow of a *vendee* had a dower right in the lands described therein, Mr. Justice MONTGOMERY, after quoting the statute, said:

"The legal estate has never rested in the defendant Henry R. Leonard in either case. Counsel cites the case of *Clapp* v. *Galloway*, 56 Mich. 272, as authority for the claim that a widow is dowable in lands held by her husband under contract of purchase. It would seem that the utterance of Mr. Justice SHERWOOD in that case was *dictum*. It is not in harmony with the decisions in this State, both before and after."

A similar question was presented in *Dalton* v. *Mertz*, 197 Mich. 390. Chief Justice KUHN, speaking for the court, said:

"Mrs. Dalton had no vested interest in the property, and any rights she may have came to her from her husband. It is clear that she has no dower rights in the property held by land contract (*Stephens* v.

*Leonard,* 122 Mich. 125) and her signature was therefore not necessary to the transfer of the land contract by assignment."

May it not be said that either the widow of the vendor or of the vendee is entitled to such dower right? This question, however, is not before us for decision.

I concur in the conclusion reached except that, in my opinion, the widow is not entitled to any distributive share of the moneys which have been or may be received by the executor as payments on the land contracts executed by the husband in his lifetime.

BIRD and MOORE, JJ., concurred with SHARPE, J.

### ON MOTION FOR REHEARING.

PER CURIAM. In the opinion filed we assumed that the land contracts were signed by both Mr. and Mrs. Baker after their marriage. In this we were in error. Land contracts, having an appraised value of $61,818.35, were executed by Mr. Baker before marriage, and land contracts, of the appraised value of $55,980.40, were executed by Mr. Baker after his marriage, and Mrs. Baker did not join.

In an application for rehearing counsel for plaintiffs state:

"We feel partly at fault for the mistaken impression the court had of these contracts, for we failed to point out in our brief that some of the contracts were made prior to Baker's marriage to the defendant, and that she did not sign any of those made after marriage."

The correction now made leads to no change in the rule announced in the opinion filed, and the motion for a rehearing is denied, without costs.