142   491
147   ³631|

142      491|
149   ³307|
149   ³308|

### *In re* STANTON'S ESTATE.

1. TAXATION—INHERITANCE TAX—STATUTE—CONSTRUCTION.
     By section 21 of the inheritance tax law of 1899 (Act No. 188) the legislature intended the tax to be measured by property which it is within the power of the State to tax, and not by property which State policy has selected for purposes of general taxation.

2. SAME—STATUTES—ADOPTION FROM SISTER STATE—PRIOR CONSTRUCTION.
     The inheritance tax law of 1899 (Act No. 188) was adopted, together with its judicial interpretation, from the State of New York.

3. SAME—PROPERTY TAXABLE — PERSONALTY, OF NON-RESIDENT DECEDENTS.
     Personal property situated in this State, belonging to a nonresident decedent, is taxable here under the inheritance tax law of 1899 (Act No. 188), notwithstanding a similar tax has been levied by the State of his domicile upon the theory of the fiction that the situs of personal estate is the domicile of the owner.

4. SAME—LAND CONTRACTS.
     Land contracts owned by a decedent as vendor are taxable to his estate as personal property under the inheritance tax law of 1899 (Act No. 188).

Error to Wayne; Hosmer, J.   Submitted November 10, 1905.   (Docket No. 121.)   Decided December 30, 1905.

Stephen K. Stanton, executor of the last will and testament of Mary B. Stanton, deceased, appealed to the circuit court from an order of the probate court determining the amount of an inheritance tax.   There was a judgment sustaining the tax in part, and the executor brings error. Affirmed.

*Gray & Gray*, for appellant.

*John E. Bird*, Attorney General (*Roger Irving Wykes* and *Thomas Ambrose Lawler*, of counsel), for the people.

OSTRANDER, J.   The probate court for the county of
Wayne determined the inheritance tax to be paid from the
estate of Mary B. Stanton, deceased.   Act No. 188, Pub.
Acts 1899.   The executor, who is the plaintiff in error,·
appealed to the circuit court.   The court heard the case
without a jury, and made a finding of facts and of law:

"1. Said Mary B. Stanton died in the city and State
of New York on March 29, 1901, being then, and hav-
·ing for upwards of 23 years then last past been, a resi-
dent of the said city of New York.

"2. Under her will, duly admitted to probate, the bene-
ficiaries and their relations to her and their places of resi-·
dence are as follows: Stephen K. Stanton, husband,
New York City; Samuel M. Stanton, son, New York
City; Lawrence M. Stanton, son, New York City;
Stephen B. Stanton, son, New York City; Alexandrine
M. Spalding, daughter, Cambridge, Mass.— all of whom
are of full age.

"3. At the time of her death, said Mary B. Stanton
owned a farm near Big Rapids, valued at $1,250, which
was the only real estate in the State of Michigan abso-
lutely owned by her at the time of her death.

"4. That at the time of her death said Mary B. Stanton
held the following promissory notes, all secured by mort-
gages upon lands in the State of Michigan:

|  | Amount unpaid. |
|---|---|
| William Nelson | $300 00 |
| E. N. Fitch | 300 00 |
| E. N. Buck | 100 00 |
| Samuel Bush | 300 00 |
| Julius Kranzier | 680 00 |
| Edgar Starret | 1,400 00 |
| Margaret O'Donnell | 433 03 |
| Alexander Mortimer | 680 00 |
| Thomas Collins | 1,000 00 |
| John Viner | 625 00 |
| Mary C. Peckham | 2,000 00 |
|  | $7,818 03 |

"5. That at the time of her death said Mary B. Stan-
ton owned 37.50 shares of the capital stock of the Chicago,
Wilmington & Vermillion Coal Company, a corporation
organized under the laws of the State of Illinois and whose

business office and all of whose property were situated in the State of Illinois. Said stock was of the value of $2,250.

"6. That at the time of her death, said Mary B. Stanton owned 100 shares of the capital stock of the Detroit National Bank, a corporation organized under the banking laws of the United States and doing business in said city of Detroit. Said stock was of the value of $13,800.

"7. During her lifetime said Mary B. Stanton had sold upon executory land contract five parcels of land situate in the State of Michigan, the legal title of which remained in her at the time of her death. The several amounts unpaid thereon were as follows:

| | |
|---|---|
| Christine Smith | $2,000 00 |
| John J. Traver | 1,335 01 |
| F. A. Pfannenschmidt | 1,368 03 |
| Frederick Kingsland | 905 00 |
| A. M. Traver | 1,680 74 |
| | $7,288 78 |

"8. That at the time of her death said Mary B. Stanton had on deposit to her credit in said Detroit National Bank the sum of $6,862.45.

"9. That during the time of the residence of said Mary B. Stanton and Stephen K. Stanton in the city of New York, said Stephen K. Stanton kept an office in said city of Detroit, and that the notes and mortgages above described in paragraph 4, the certificate of stock in the Chicago, Wilmington & Vermillion Coal Company, above described in paragraph 5, the certificate of stock in the Detroit National Bank above described in paragraph 6, and the land contracts described in paragraph 7, were at the time of the death of said Mary B. Stanton actually in said office of Stephen K. Stanton in said city of Detroit.

"10. That said Stephen K. Stanton held a power of attorney from Mary B. Stanton, authorizing him to draw checks against the deposit in the Detroit National Bank, and to receive moneys payable to her, and to discharge mortgages held by her.

"11. That the State of New York assessed and has collected from the estate of Mary B. Stanton an inheritance tax upon the personal property herein described in accordance with the laws of that State.

"12. That the property so owned by said decedent and represented at the time of her death by such securities and

deposit (mentioned in paragraph 9, except the certificate of stock in the Chicago, Wilmington & Vermillion Coal Company) was possessed by said decedent (though not in the same form) prior to her removal from Detroit to New York, and has since been invested in Michigan and re-invested there when collections were made or loans terminated. That the mortgages and papers representing such property have always been kept in Michigan for the purposes of collection, deposit and reinvestment, though they might have been temporarily taken to New York.

"CONCLUSIONS OF LAW.

" 1. That there is no inheritance tax payable upon the real estate.

" 2. That the stock of the Chicago, Wilmington & Vermillion Coal Company cannot be considered as within the State of Michigan, and no inheritance tax is, therefore, payable thereon.

" 3. That all the remainder of the property above described must be considered as within the State of Michigan, and therefore an inheritance tax is payable thereon, less the statutory exemption of $5,000, at the rate of one per centum."

It is assigned as error that the facts found do not support the third conclusion of law. The propositions of counsel for the executor may be thus stated:

" The principle which supports the levying of an inheritance tax is that it is a tax upon the right of succession, and not upon property. *Union Trust Co.* v. *Wayne Probate Judge*, 125 Mich. 487, 493.

" The right of succession is an intangible right, and has no situs except in the State creating the right, and a State has not power to impose a tax upon a succession right granted by another State.

" The Federal decisions and those of the State of New York, holding such a right to be taxable in a State other than that of the domicile of decedent, have ignored the principle which alone supports the right to tax.

" In any event, our statute measures the tax to be imposed by the property which is by the law of the State generally taxable, and not by the property which the State may tax. This last proposition requires that there be no inheritance tax imposed, in this case, upon the succession

to the mortgage notes, the land contracts (treated as personal estate), and the deposit in the bank.

"It should be held that the interest represented by the land contracts is real and not personal property."

The words requiring interpretation, found in section 21 of the act, are:

"Shall include all property or interest therein whether situate within or without this State, over which this State has any jurisdiction for the purposes of taxation."

There are three reasons for holding that the legislature intended the tax to be measured by property which it is within the power of the State to tax, and not by property which State policy has selected for purposes of general taxation.

One reason is that the statute is adopted, together with a judicial interpretation of the language above quoted, from the State of New York. *Stellwagen* v. *Wayne Probate Judge*, 130 Mich. 166. And, as interpreted by the courts of New York, the design of the legislature to tax the transfer of everything which it has the power to tax is found in the act. *Matter of Whiting*, 150 N. Y. 27 (34 L. R. A. 232); *Matter of Houdayer*, 150 N. Y. 37 (34 L. R. A. 235); *Matter of Sherman*, 153 N. Y. 1; *Matter of Hellman*, 174 N. Y. 254. See, also, *Blackstone* v. *Miller*, 188 U. S. 189; *Plummer* v. *Coler*, 178 U. S. 115. The second reason is that a policy of general taxation, which recognizes, to some extent at least, the rule of universal succession and the theory of taxation of personal property, generally, at the domicile of the owner, is not logically controlling of the interpretation of a statute imposing a tax upon a right of succession or upon a transfer of property which can only be tangible and enforceable—be made effective—in the jurisdiction, and by virtue of the laws and institutions, of the situs of the property. A third reason is that, as a tax upon succession or transfer, uniformity of operation and an equal measure of the tax to the property of residents and nonresidents can be, with no other construction, secured. There is property situated

within the State, belonging to nonresidents, which the State does not tax, generally (*Village of Howell* v. *Gordon*, 127 Mich. 517, *Baars* v. *City of Grand Rapids*, 129 Mich. 572), though it might tax it (*Catlin* v. *Hull*, 21 Vt. 152; *New Orleans* v. *Stempel*, 175 U. S. 309). Property of the same class owned by residents is taxed, generally.

It has been before this pointed out (*Blackstone* v. *Miller*, supra) that under a statute like ours, in cases like the one at bar and with reference to the same property, one State imposes a succession tax upon the theory of the fiction that the situs of personal estate is the domicile of the owner, while another State imposes it upon the ground that the actual situs is within that State, and the same State may assume either position, as the domicile of the decedent or the presence of his property within the State requires it. Courts are properly concerned only with the questions of legislative purpose and the power to give the ascertained purpose effect. In this case, both of these questions are resolved against the appellant.

Counsel for the executor directs attention to the opinions in *Re Estate of Pulling*, 97 Mich. 375, and *Bowen* v. *Lansing*, 129 Mich. 117 (57 L. R. A. 643), with the statement that, as the last case does not refer to the earlier one, the precise character of the property owned by the vendor in a land contract may be said to be undetermined; that as real estate it passes in the case at bar to the children, and is not considered in levying the tax, while as personal estate it is valued. The point seems to be ruled, for this case, by the decision in *City of Marquette* v. *Iron Co.*, 132 Mich. 130.

The order and determination of the circuit court is affirmed, with costs.

Moore, C. J., and McAlvay, Montgomery, and Hooker, JJ., concurred.