*In re* BRACKETT ESTATE.

MORISON *v*. DEPARTMENT OF REVENUE.

1. TAXATION—INHERITANCE TAX—CONSTRUCTION OF STATUTES.
   The legislature, in passing the inheritance tax statute, intended the tax to be measured by property which was within the power of the State to tax (CL 1948, §§ 205.201–205.221).

2. SAME—PRACTICAL CONSTRUCTION OF STATUTES.
   Taxing is a practical matter and taxing statutes must receive a practical construction.

3. SAME—CONSTRUCTION OF STATUTES.
   A tax statute will not be extended by implication nor so narrowly interpreted as to defeat the purposes of the act.

4. SAME—PROPERTY.
   The legislature may subject to tax all kinds of property and any and all interests therein.

5. SAME—INHERITANCE TAX—PROPERTY—EMPLOYEE'S SHARE OF PROFIT-SHARING PLAN.
   Provision of inheritance tax statute that the word "property"

---

REFERENCES FOR POINTS IN HEADNOTES

[1] See, generally, 28 Am Jur, Inheritance, Estate and Gift Taxes §§ 34, 35, 64.
[2–4] 51 Am Jur, Taxation §§ 308–310.
[5, 6, 11] See, generally, 28 Am Jur, Inheritance, Estate and Gift Taxes § 64.
[7–9] See, generally, 28 Am Jur, Inheritance, Estate and Gift Taxes §§ 115, 116, 139, 147.
[10] 28 Am Jur, Inheritance, Estate, and Gift Taxes § 115.
[12] See, generally, 14 Am Jur, Costs § 34.

should be taken "to mean the property or interest therein of the testator, intestate * * * passing or transferred to those not herein specifically exempted * * * and not as the property or interest therein passing or transferred to the individual legatees, devisees, heirs, next of kin * * * and shall include all property or interest therein * * * and including all property represented or evidenced by note, certificate, stock, land, contract, mortgage or other kind or character of evidence thereof" was not intended to exclude and free from inheritance taxation, an employee's share in a profit-sharing plan, a type of property and property right so valuable that it would serve not only as a reward but also as a labor incentive, so completely vested that it would be impossible to revert to the contributor employer and so thoroughly under the employee's control that he could name the person or persons who would take upon his demise (CL 1948, § 205.221).

6. SAME—INHERITANCE TAX—SHARE IN PROFIT-SHARING PLAN—CONTINGENT ENJOYMENT.

The fact that the enjoyment of the person, designated by the employee to take share in profit-sharing plan to which only the employer had made contributions but which was a non-reverting-type trust, might be defeated by certain contingencies, does not deny the existence of the property right subject to the inheritance tax but raises a question as to its value (CL 1948, § 205.221).

7. SAME—INHERITANCE TAX—TRANSFER OF PROPERTY.

It is unnecessary that there be a formal common-law conveyance in order to have a transfer of property that is taxable under the inheritance tax law (CL 1948, §§ 205.201–205.221).

8. SAME—INHERITANCE TAX—TRANSFER OF PROPERTY—STATUTORY STANDARD.

The taxability of a transfer of property under the inheritance tax law is not to be determined by the refinements of conveyances or the technicalities of contracts, but by comparing the substance and practical effect of what was done with the standards set up by the act imposing the tax (CL 1948, §§ 205.201–205.221).

9. SAME—INHERITANCE TAX—TRANSFER OF PROPERTY.

The policy, expressed by the inheritance tax law, is that the owner of property shall not defeat or evade the tax by any form of conveyance or transfer, where after death the income, profit or enjoyment inures to the benefit of those who are not exempted (CL 1948, §§ 205.201–205.221).

10. SAME—INHERITANCE TAX—TEST OF TAXABILITY OF A TRANSFER.

The test of whether property is taxable under the inheritance tax act is always whether the property comes into possession and enjoyment of the transferee upon the death of the transferor for if the death of the transferor makes no difference in the rights of the parties in the property, there is no tax (CL 1948, §§ 205.201–205.221).

11. SAME—INHERITANCE TAX—TRANSFER OF SHARE IN PROFIT-SHARING PLAN.

Employee's designation of his share in trust fund, composed of unrecoverable contributions by employer, which might become a claim by reason of his death, as payable (1) to his daughter, or (2) in case she did not survive him, to his legal representatives constituted a transfer of his property that was taxable under the inheritance tax act (CL 1948, §§ 205.201–205.221).

12. COSTS—PUBLIC QUESTION—INHERITANCE TAX—PROFIT-SHARING PLAN.

No costs are allowed in case involving question as to taxation under inheritance tax act of employee's share in irrecoverable profit-sharing plan, a public question being involved (CL 1948, §§ 205.201–205.221).

Appeal from Wayne; Brennan (John V.), J. Submitted January 12, 1955. (Docket No. 2, Calendar No. 46,284.) Decided March 9, 1955. Rehearing denied June 7, 1955.

In the matter of the estate of Clare L. Brackett, deceased. Petition by MaryLin C. Brackett Morison, Raymond K. Dykema and Nathan B. Goodnow, executors, for redetermination of inheritance tax, over the opposition of the department of revenue, State of Michigan, to exclude from levy deceased's interest in employer's profit-sharing plan. Determination as made in probate court, holding such interest taxable, affirmed in circuit court. Plaintiffs appeal. Affirmed.

*Dykema, Jones & Wheat,* for plaintiffs.

Thomas M. Kavanagh, Attorney General, *Edmund E. Shepherd,* Solicitor General, *T. Carl Holbrook* and *William D. Dexter,* Assistants Attorney General, for defendant.

Smith, J. The facts herein are stipulated. The case involves the taxability, under our inheritance tax act (CL 1948, § 205.201 *et seq.* [Stat Ann and Stat Ann 1947 Cum Supp § 7.561 *et seq.*]), of the deceased's share of a profit-sharing plan. In brief, the deceased, Clare L. Brackett (hereinafter for brevity referred to as the deceased) was the president of the National Machine Products Company of Detroit (hereinafter referred to as the company). In December of 1941 this company established a profit-sharing savings and retirement plan for its employees. Under the terms of the plan the company deposited annually with a trustee a percentage of its profits. Each such deposit was then allocated on the books of the trustee among the company's employees in proportion to their compensation, an employee's portion thereof being termed a "participant's" share.

Each annual contribution by the company (the employees made none) was to be held by the trustee for 10 years, during which time interest accrued thereon, and was then to be distributed to the employees in 3 annual instalments. Should an employee leave the company, he was entitled to receive his share in 3 instalments, or he could (in event of retirement or prolonged illness) receive his entire share in one lump sum. He was also entitled to name a beneficiary to receive his share in the event of his death. The plan, in addition, contained a typical spendthrift clause and the company reserved the right to (and did) amend the plan from time to time and under certain limitations. Among the lat-

ter were provisions to the effect that the participants' interests in past contributions could not be impaired, nor could the company recapture the fund or any part thereof for its own use and benefit.

Pursuant to the provisions of the plan, the company deposited large sums of money with its trustee, the National Bank of Detroit, on whose books it was allocated to the individual employees in the manner heretofore described. Also in accordance with the provisions of the plan, as will hereafter be described in more detail, the deceased named his daughter, appellant herein, as the person to receive his beneficial share in the event of his death. The deceased departed this world on October 4, 1948, at which time the amount credited to him on the books of the trustee amounted to $76,846.29.

The probate court, in making a determination of the Michigan inheritance tax, included as a taxable transfer the above sum of $76,846.29, which so passed to MaryLin C. Brackett Morison, the named beneficiary. After the reaffirmation of this position upon appellants' petition and appellee's cross petition for redetermination of the tax, the matter was appealed to the circuit court which held that the said sum was taxable as a transfer intended to take effect in possession or enjoyment at or after the death of the decedent within the meaning of section 1, subdivision third, of Michigan inheritance tax statute.* The matter comes to us upon appeal from such determination and order entered pursuant thereto.

The impact of high taxes of all kinds, income, estate, inheritance, gift, and others has caused significant changes in our economy. Various devices have been employed to lessen such impact, among them profit-sharing plans of the type with which

---

* CL 1948, § 205.201 (Stat Ann 1947 Cum Supp § 7.561).

we are here concerned. This is not to dismiss as unimportant, or even as secondary, the other advantages of such plans involving, as they do, incentives for younger employees to stay with the firm, security for older employees and better labor-management relations, but we are here concerned with the fiscal aspects of such plan. See Deferring Compensation Through the Use of Pension and Profit-Sharing Plans (4 Syracuse LR 319). The writer of a recent article (Lubick, Designing a Deferred Compensation Profit-Sharing Plan for a Small Company, 3 Buffalo LR 222, 223) succinctly describes the advantages of using a plan qualified, as was the plan in the case at bar, under the then section 165(a) of the internal revenue code:

"If you use a qualified plan and trust, you will become entitled to very significant tax advantages.

"First of all, the company, within certain limits, will get a tax deduction for its contribution against the year's profits. Since you make contributions only in profitable years, it is to your advantage to get your deduction in such years, when you are sure to have taxable income, even though the money is not received by the employees until later years. Thus the tax collector will foot part of the bill for your retirement plan.

"Second, the employee pays no tax on the money contributed by the company for his account until he receives it. This means if you are setting aside something this year for an employee's retirement, he won't be taxed on it this year on top of his other earnings, but will be taxed only at retirement when he receives it and his earnings are down. This is particularly advantageous to you because of your present high tax bracket. While you would like to get more salary now, wouldn't you prefer it if a sum were set aside for you now, which you would draw on at and after retirement when your tax bracket is much lower? In other words it is more

advantageous for you to save for old age out of currently untaxed money, than to receive higher pay currently, on which you must pay taxes now, and save after taxes. Also under certain circumstances you can get your money out of a qualified trust as a long-term capital gain at a maximum tax rate of 25%, and in your tax bracket that is certainly an advantage.

"Third, the trust fund in which the profit-sharing contributions are accumulated pays no tax on its earnings. If it earns 4% on your share, that is certainly better than if you invested your own money at 6%, but paid tax on the income."

Not surprising, is it, that the capital invested in such funds has reached large proportions. In an editorial note in 21 George Washington LR 749, 762, the writer comments as follows on the phase of our matter:

"Profit-sharing plans have become a billion dollar enterprise. There are now more than 18,000 profit-sharing and pension plans in operation. Their assets, about $12,000,000,000, form the largest pool of private capital outside of life insurance companies. Employers are now setting aside about $2,500,000,-000 a year for their plans and that figure is expected to be over $3,000,000,000 by 1953. Some employers' annual contributions are over $1,000,000. New plans are being filed with the commissioner at a rate in excess of 300 a month."

We have sketched this background to indicate the nature and magnitude of the problem, particularly in view of the fact that this case is one of first impression in this Court. The precise issue presented is whether or not the employee's share of the profit-sharing fund, passing to a beneficiary designated by the employee, is taxable under our inheritance tax act. The appellants say not. They insist that, upon these facts, the deceased did not make a lifetime

transfer of property or an interest therein, that the proceeds in dispute were not owned by deceased during his lifetime, that they did not pass from him to his beneficiary by a lifetime transfer, and that the deceased did not withhold possession or enjoyment of the proceeds from his daughter during his lifetime, all of which they assert is required for taxability under the act. In addition, we are pressed with the argument that this case is analogous to life insurance and the proceeds here involved should not be taxed under the act for the same reason that life insurance is not taxed. As to the latter, we will only say that we will meet the life insurance case when it arises and the instant case will be decided on its own merits.

The appellee, on the other hand, argues that the decedent did, in fact and law, transfer property or interest therein to his daughter to take effect in possession or enjoyment (of such daughter) at or after his death within the meaning of the inheritance tax act. Appellee also argues the applicability of the power of appointment section of the act.

We will first address ourselves to the matter of the property interest of the decedent. In order to answer this question, (*i.e.,* whether or not decedent had the requisite property interest within the meaning of the statute) it will be fruitful to review the details of the plan in connection with which the alleged property interest arose. It was described, as noted heretofore, as a profit-sharing plan. One announced purpose was to enlarge employees' incomes during their later years. Such enlargement did not result from the caprice of the employer. Its purpose was that of reward. Reward for what? We will quote from the company's statement to its employees:

"Through this plan, you are given an opportunity to share in the profits of the company. It was adopted after considerable thought, as a reward and incentive for your continued loyal and efficient service. Its success depends entirely upon your ability and your efforts to produce the necessary profitable results."

The reward, then, was for work and labor performed. The greater the effort, the larger the reward. It thus furnished an incentive for redoubled efforts to the end that profits might be increased. The plan in this respect differs from many of those described in cases cited to us. Here the element of consideration, the *quid pro quo,* the compensation earned but deferred in enjoyment, is found, rather than the outright gratuity. Likewise, it differs from the purchased annuity cases, the simplest type of which is the annuity purchased directly by the employee from his own funds and subject wholly to his order. Here the employee made no contribution whatever from his own funds, as distinguished from his own efforts.

What was the nature of his rights in the fund prior to his death? It is clear that his share of the money was not so completely subject to his dominion as the dollar bill in his pocket. It was not in his physical possession. He could not spend it. He could not pledge it. He could not borrow it, although he could, for the first 3 years of the plan, borrow from the trustee up to "the minimum amount payable to the borrowing participant upon termination in any manner of his interest in the fund." Despite these restrictions, however, the striking characteristic of the plan, from a property standpoint, was that the money was his and his alone. Under no circumstances could the company recapture the fund for its own use or benefit. It was provided in the plan itself that it should be

"impossible at any time  *  *  * for any part of the fund or the income thereof to revert to, or inure to the benefit of, the employer, either directly or indirectly, or to be used for or diverted to purposes other than for the exclusive benefit of the participants or their beneficiaries."

The language of impossibility is strong language. The trustee, obviously, held the fund solely for the employees, of whom decedent was one. Nor was enjoyment thereof to be long deferred. After 10 years, distribution might be had. If the employee quit, however, or was discharged, or retired, or suffered prolonged illness, he was nevertheless entitled to his proportionate share. He was also permitted to name a beneficiary to receive his share upon his death. Accordingly, on December 15, 1943, the decedent directed the trustee to make payment of "my beneficial share" to MaryLin C. Brackett Morison, his daughter, one of the appellants here.

The inheritance tax act (CL 1948, §§ 205.201–205.221 [Stat Ann and Stat Ann 1947 Cum Supp §§ 7.561-7.582]) defines "property" as follows:

"The word 'estate' and 'property' as used in this act shall be taken to mean the property or interest therein of the testator, intestate, grantor, bargainor, or vendor, passing or transferred to those not herein specifically exempted from the provisions of this act, and not as the property or interest therein passing or transferred to the individual legatees, devisees, heirs, next of kin, grantees, donees, or vendees, and shall include all property or interest therein whether situated within or without this State and including all property represented or evidenced by note, certificate, stock, land, contract, mortgage or other kind or character of evidence thereof, and regardless of whether any such evidence of property is owned, kept or possessed within or without this State."

The language used is broad and sweeping. The legislative intent was equally broad as we pointed out in *In re Stanton's Estate,* 142 Mich 491, 495, 496, when we observed that "the legislature intended the tax to be measured by property which it is within the power of the State to tax." Nor will it be forgotten, in any question of statutory tax interpretation, that taxing is a practical matter and that the taxing statutes must receive a practical construction. While they will not be extended by implication, *People, ex rel. Attorney General,* v. *Welch's Estate,* 235 Mich 555, 564, neither will the words thereof be so narrowly interpreted as to defeat the purposes of the act. Conflicting interests are involved. As was said by Mr. Justice Cardozo in *Burnet* v. *Guggenheim,* 288 US 280, 286 (53 S Ct 369, 77 L ed 748) a case involving the assessment of a gift tax:

"The respondent invokes the rule that in the construction of a taxing act doubt is to be resolved in favor of the taxpayer. (Citing cases.) There are many facets to such a maxim. One must view them all, if one would apply it wisely. The construction that is liberal to one taxpayer may be illiberal to others. One must strike a balance of advantage."

It is clearly within the competence of the legislature to sweep within its taxable orbit all kinds of property and any and all interests therein. It is not reasonable, in our opinion, to conclude that the legislature, in the broad language above quoted, intended to exclude, and free from inheritance taxation, a type of property and property right so valuable that it would serve not only as a "reward" but also as a labor incentive, so completely vested that it would be "impossible" to revert to the contributor, and so thoroughly under the employee's dominion and control that he could, without let or hindrance, name the person or persons who would

enjoy the same in full measure upon his demise. Unrealistic, indeed, would be the conclusion that an aggregate of rights treated by the parties themselves as so compelling and substantial did not rise to the dignity of property within the meaning of the act. If this is not property, the words employed in the act must be redefined. To point out that the daughter's enjoyment might be defeated by certain contingencies does not deny the existence of the property right but raises a question as to its value. The two should not be confused.

The statute requires, however, not only an interest in property, but a transfer of such interest. The difficult cases involving transfers are those in which the owner of the vested right does nothing, or merely cuts down his present interest in favor of enlarging (or creating) an interest in another. Even in such cases, under related laws, transfer has been found under various theories. See Merry, Federal Estate and Gift Tax; Concept of a Transfer, 38 Mich Law Rev 1032 (1940); see, also, 38 Yale LJ 657 (1929). The reason lies not only in the breadth of the modern taxing statutes but in the consideration that the essence of a transfer has come to be identified more nearly with a change of economic benefits than with technicalities of title. We do not, in construing a taxing statute, require for transfer a formal common-law conveyance. As expressed in *Commissioner of Internal Revenue* v. *Wilder's Estate,* 118 F2d 281, 282, cert denied, 314 US 634 (62 S Ct 67, 86 L ed 509):

"The taxability of a transfer is not to be determined by the refinements of conveyances or the technicalities of contracts, but by comparing the substance and practical effect of what was done with the standards set up by the taxing act."

We have indorsed similar views. In *In re Kutsche's Estate,* 268 Mich 659, 667, we quoted with approval the following with respect to an inheritance or succession tax:

"Apparently the legislature intended to reach for the purpose of taxation the shifting of the enjoyment of property—the 'economic benefits' thereof or 'economic interest' therein  *  *  *  from a former owner at his death, even though such shifting of enjoyment followed necessarily from a prior transfer of title *inter vivos.*  *  *  *  'The policy of the law is, that the owner of property shall not defeat or evade the tax by any form of conveyance or transfer, where after death the income, profit or enjoyment inures to the benefit of those who are not exempted.'" *Worcester County National Bank* v. *Commissioner of Corporations and Taxation,* 275 Mass 216, 221 (175 NE 726).

This Court has consistently adhered to the rule as stated in *People, ex rel. Attorney General,* v. *Welch's Estate, supra,* 566, in determining whether a particular transfer of property comes within the statutory definitions and, hence, taxable under the inheritance tax statute:

" 'The test is always whether the property comes into possession and enjoyment of the transferee upon the death of the transferor. If the death of the transferor makes no difference in the rights of the parties there is no tax.' Gleason & Otis on Inheritance Taxation (4th ed), p 876."

Let us now examine what was done by the decedent: In accordance with the provisions of the trust indenture, he, by letter, exercised his undoubted right to name the recipient of his share, eventually amounting to $76,846.29, subsequent to his death.

It is important to note the particular language of the decedent's designation of his beneficiary:

"You are holding as trustee under this plan a certain sum designated as my beneficial share.

"In the event this share or other sums that may hereafter be deposited in said plan for my benefit shall become a claim by reason of my death, I hereby direct that the proceeds of such share or shares be paid to MaryLin C. Brackett, my daughter.

"In the event my said daughter shall not have survived me, I hereby direct you to pay the proceeds of share or shares to my executors, administrators or assigns."

By this act, exercised in accordance with the provisions of the trust instrument, he caused the reward heretofore earned by him, and allocated to him beyond possibility of divestment, to move at his death to the natural object of his testamentary bounty, his daughter. Did it move free of inheritance tax on the theory that he made no "transfer" within the meaning of the act? We hold not. By such act, so exercised, he effected the shifting and passing to her of substantial economic benefits coming to complete fruition and enjoyment at the time of his death. Such was a transfer within the meaning of the act, and as such it was taxable to the extent and in the manner determined in the court below.

The conclusions we have reached are also those reached by our neighboring State, Ohio, upon very similar facts. In the case of *In re Estate of Daniel,* 159 Ohio St 109, 114 (111 NE2d 252), the court concludes as follows:

"The fund definitely set aside for the employee, Daniel, whether deemed additional compensation or otherwise, was his to dispose of at his death just as any other property which he possessed, and by his direction it passed to his designated beneficiary."

It would prolong this opinion to undue length to comment upon the various theories and cases cited

to us by both parties. Suffice to say we have reviewed and examined them all (as well as others) and are satisfied that, because of factual, statutory and other differences, they are distinguishable from the case at bar and inapplicable to the fact situation here presented.

Under the view we have taken, we do not find it necessary to pass upon the power of appointment argument and we make no finding with respect thereto.

The decree of the lower court is affirmed. No costs will be allowed, a public question being involved.

CARR, C. J., and BUTZEL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.